IN THE

# SUPREME COURT

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1908, AND MAY TERM, 1909, IN THE NINETY-THIRD YEAR OF THE STATE.

---

### THE STATE OF INDIANA, EX REL. McGUYER, v. HUFF.

[No. 21,345. Filed February 19, 1909.]

1. APPEAL.—*Briefs.*—*Failure to File.*—*Rules.*—Appellee's failure to file a brief is sufficient cause for a reversal. p. 4.

2. PLEADING.—*Demurrer to Answer.*—*Form.*—A demurrer to paragraphs of answer for the reason that "neither of said paragraphs of answer contains facts sufficient to constitute an answer to plaintiff's complaint," presents no question. p. 4.

3. PLEADING.—*Answer.*—*Completeness.*—An answer, presented as a complete defense to a cause, must state facts sufficient to constitute a complete defense, and it will be insufficient if it constitute but a partial defense. p. 4.

4. OFFICERS.— *Removal from State.*— *Abandonment.*— *Evidence.*— Evidence that a township assessor sent to the board of commissioners a letter of resignation on condition that the board appoint a named person as his successor, and stating that he would be absent from the State, between December and March, on account of his health and to visit a brother's grave, is insufficient to show a change of residence or an abandonment of the office. p. 4.

5. OFFICERS.—*Abandonment of Office.*—The abandonment of an office requires a total, permanent relinquishment of the duties thereof. p. 6.

6. OFFICERS.—*Township Assessors.*—*Vacancy.*—*Auditor's Decision.* —The *ex parte* decision of the county auditor that there exists a vacancy in the office of township assessor does not create a vacancy therein. p. 7.

7. OFFICERS.—*"Resignation."*—To constitute a "resignation" of an office there must be an intention to relinquish the same—a renunciation of the further right thereto. p. 7.

8. OFFICERS.— *Resignations.— To Whom Made.— Revocation.*— A resignation must be made to those having the power to appoint a successor or to call an election, and can be recalled at any time before acceptance. p. 7.

9. OFFICERS.—*Resignations.—Township Assessors.*—A letter of resignation by a township assessor to the board of commissioners, conditioned upon the board's appointment of a named person as his successor, is ineffective, the same being conditional, and being addressed to the board instead of to the auditor, the appointing power. p. 8.

10. CONTRACTS.—*For Resignation of Officers.*—Contracts for the resignation of an officer in favor of another, or to promote another, or for the appointment of another, are void as against public policy. p. 9.

11. EVIDENCE.—*Acts of Others.—Contracts to Resign Office in Favor of Another.*—In an action to recover possession of the office of township assessor, evidence that the board of commissioners' appointee, in whose favor the relator had conditionally resigned, had offered to resign his rights for a stipulated sum, is inadmissible as against the relator. p. 9.

From Martin Circuit Court; *J. T. Rogers,* Special Judge.

Action by The State of Indiana, on the relation of Walter McGuyer, against John R. Huff. From a judgment for defendant, plaintiff appeals. *Reversed.*

*Frank E. Gilkison,* for appellant.

MYERS, J.—The complaint alleges the election of relator to the office of assessor of Mitcheltree township in Martin county, Indiana, at the general election of 1904, his eligibility and qualification, and the discharge of his duties as such until February, 1907, when upon demand upon the auditor for the necessary and prescribed assessor's books, blanks and other papers they were refused him; that the auditor had attempted to appoint appellee as assessor, and had accepted and approved a pretended bond tendered by appellee, and administered a pretended oath of office to appellee and delivered to him all the plats, books, blanks, papers and other official supplies for the assessor of said township, and recog-

nized appellee as the assessor of said township; that on February 27, 1907, relator demanded from appellee the surrender to relator of all the plats, books, blanks, papers and other supplies for the assessor of said township, which appellee had in his possession, and that he deliver up the office to relator, all of which appellee refused, and has usurped and intruded into such office, and since said time has continued illegally and wrongfully to hold said office, to the great damage of relator, who is the assessor of said township and entitled to exercise the functions and perform the duties of said office. Prayer that relator be declared the true, acting and legal assessor, and that appellee be declared a usurper, and that he be ordered to turn over all books, plats and blanks appertaining to such office to relator, and for $100 damages.

Appellee answered in two paragraphs: One paragraph admitting the election of relator as assessor at the general election of 1904, and his qualification and discharge of the duties until December 15, 1906, "at which said time he voluntarily abandoned said office and left the State of Indiana, with the avowed purpose of remaining away permanently," and alleging the appointment, January 29, 1907, of appellee to fill the unexpired term of relator, appellee's eligibility, qualification and entry upon the duties of his office, and his continuance in discharge of those duties under such appointment. The second paragraph alleges the written resignation of relator submitted to the board of commissioners on December 15, 1906, and its acceptance, the appointment of a successor by the board and such appointee's failure to qualify, the eligibility of appellee, his appointment by the auditor, his qualification, etc., and that he is acting by virtue of such appointment.

The demurrer of appellant to each of these answers was overruled, and exceptions reserved. There was a reply in general denial, a trial, finding and judgment for appellee.

Appellant assigns error upon the rulings upon demurrer to the answers, and in overruling the motion for a new trial.

We have not been favored with a brief from appellee, and would be justified in reversing the judgment, instead of being thereby forced to examine this record for ourselves, to determine whether there are any grounds of affirmance.

The form of the demurrer to the answer is that "neither of said paragraphs of answer contains facts sufficient to constitute an answer to plaintiff's complaint and information." This form presents no question. It is not a question whether the facts are sufficient to constitute an answer, but whether, taken as a whole, the pleading states facts sufficient to constitute a defense to the action. It might state facts sufficient to constitute a partial answer, or an answer to so much of the complaint, if so pleaded, but if addressed to the whole complaint it must challenge the whole, as pleaded, and if pleaded as a defense, the question is whether, so pleaded, it constitutes a defense to the action. The code provides for but one form of demurrer to an answer, and it must be substantially followed. 1 Woollen, Trial Proc., §§1677, 1678.

The motion for a new trial challenges the sufficiency of the evidence to support the finding, and also the admissibility of certain evidence introduced. Relator, being about to make a trip to California in December, 1906, addressed the following communication to the board of commissioners of the county of Martin:

"December 15, 1906.
To the Board of Commissioners of the County of Martin.
    This is to certify that I, assessor of Mitcheltree township, do hereby ask you to appoint Robert C. Armstrong as my successor, as assessor of said township. If you cannot appoint him as my successor, I decline to resign, and will have him appointed as my first deputy.
                                    Walter McGuyer,
                    Mitcheltree Township Assessor."

This paper he delivered to Armstrong, who in turn delivered it to one of the members of the board, when not in session, or

to the auditor. There is some conflict in the evidence as to whether the paper was delivered by Armstrong to the auditor, or by one of the members of the board. It bore the auditor's file mark, and was presented to the board, and an order entered on December 31, 1906, as follows: "Comes now Walter McGuyer, assessor of Mitcheltree township, and presents his resignation of said office of assessor, effective at once. Ordered by the board that the same be and is hereby accepted, and further ordered that Robert C. Armstrong be, and he is hereby, appointed assessor of Mitcheltree township to fill the unexpired term of Walter McGuyer."

On January 29, 1906, the auditor of Martin county, after reciting that relator, the former assessor, had tendered his resignation to the county commissioners, and removed from the State, and the commissioners had appointed Armstrong, who was at the time ineligible, and that the office was vacant, appointed appellee to fill the unexpired term of relator, and appellee took the oath of office, qualified, and has since acted. The parol evidence shows no intention on the part of relator to remain in California, or to abandon his residence in Mitcheltree township, but shows an intention to return not later than March ensuing, unless the board should appoint Armstrong as his successor, or he should appoint Armstrong as his deputy, and then not later than March 15, 1907. There appears to have been some communication between relator and the commissioners prior to December 15, 1906, in regard to his going away, and in regard to his selection of a deputy, and there was an impression that the commissioners might have something to do with his appointing a deputy, in case they could not appoint a successor, or that he had to be present to appoint one himself, and it appears from the evidence that he supposed, until after the appointment of appellee, that Armstrong had been selected as his deputy, when he learned of it through a county paper. As early as January 20, 1907, relator had made preparations to return from

California. On February 18, 1907, he wrote from California to the auditor of Martin county:

> "I should have written you before, but have failed. I will leave to-morrow for Indiana to do my work as an assessor, as Mr. Armstrong failed to qualify, and my resignation which I sent was to the effect that if he did not serve, I was not to be considered as resigning. I will be at Shoals on March 1."

He returned February 26. The disclosed objects of his going away were on account of his health, and to visit the grave of a brother, who, as a soldier, had been killed in the Philippines, and his body brought back to San Francisco for burial. The latter was his primary purpose. There was no official duty for relator to perform between December 15, 1906, and March 1, 1907. A return ticket had been wired to him by his brother at Indian Springs in his township, February 5, or 6, 1907. At that time he did not know of the appointment of appellee, but learned of it before he left California. Prior to his leaving home he had sold a horse conditionally, so that he might, on his return, repurchase it at the same price. Giving this evidence the intendment most favorable to appellee, we think it clear that relator's absence was only temporary; was with a fixed purpose of returning, not only to his residence but to his official duties; was at a time when there were no duties which he could be called upon to perform, or could perform, and there is no evidence to sustain the theory of abandonment. In order to constitute an abandonment of office, it must be total, and under such circumstances as clearly to indicate an absolute relinquishment. Temporary absence is not sufficient. *State, ex rel.,* v. *Scott* (1908), 171 Ind. 349; *Relender* v. *State, ex rel.* (1897), 149 Ind. 283; *Yonkey* v. *State, ex rel.* (1866), 27 Ind. 236; *People, ex rel.,* v. *Green* (1874), 58 N. Y. 295; *Page* v. *Hardin* (1848), 8 B. Mon. 648; *State, ex rel.,* v. *Baird* (1871), 47 Mo. 301; Throop, Pub. Officers, §425, and cases cited.

The *ex parte* judgment of the auditor that a vacancy existed did not create a vacancy. *State, ex rel., v. Harrison* (1888), 113 Ind. 434, 3 Am. St. 663.

We come then to the question whether the paper relied on constituted a resignation. When it was offered, it was not objected to by relator on the ground that it had not been pleaded, and the question as to whether it was admissible on that ground is not presented. Nor was it objected to upon any ground of inadmissibility, but upon the ground that it was not a resignation, but a communication to the board of commissioners. It then resolves itself into the matter of the proper construction of the paper. In that determination several propositions of law are to be considered.

In order to constitute a resignation, it must be unconditional, with intent that it shall operate as a resignation. *State* v. *Clarke* (1867), 3 Nev. 566; *State, ex rel.,* v. *Fitts* (1875), 49 Ala. 402.

"To constitute a complete and operative resignation, there must be an intention to relinquish a portion of the term of office, accompanied by the act of relinquishment. Webster and Richardson define the words 'resign' and 'resignation' substantially thus: To resign, is to give back, to give up, in a formal manner, an office; and resignation is the act of giving it up. Bouvier says, resignation is the act of an officer by which he declines his office, and renounces the further right to use it." *Biddle* v. *Willard* (1857), 10 Ind. 62.

Resignations must be made to the appointing power, or power authorized to call an election. §9141 Burns 1908, §5557 R. S. 1881; *State, ex rel.,* v. *Popejoy* (1905), 165 Ind. 177; *Van Orsdall* v. *Hazard* (1842), 3 Hill (N. Y.) 243, 247; *Edwards* v. *United States* (1880), 103 U. S. 471, 26 L. Ed. 314.

A resignation may be withdrawn if not accepted, and it has been held not effective, although a successor has been appointed, if it was transmitted without the officer's consent. *Biddle* v. *Willard, supra; State, ex rel.,* v. *Boecker*

(1874), 56 Mo. 17; *Rogers* v. *Slonaker* (1884), 32 Kan. 191, 4 Pac. 138.

With these principles before us, we think there can be but one construction placed upon the writing in question:

9. The appointing power as to township assessors is in the auditor, and not in the board of commissioners. §10251 Burns 1908, Acts 1903, p. 49, §16. The paper in question was not in the form of an unconditional resignation, and was not addressed to the appointing power. On its face it purports to be a private communication to the board of commissioners, which neither had the power of accepting a resignation nor appointing a successor, hence any action it might take would be of no force or validity. At most, it is a communication to the members of the board as to their opinion of their authority to appoint a successor, and, if such authority is granted to them, requesting the appointment of Armstrong, and, in case they had power to act, was sufficient to authorize the inference of a formal resignation. It was thus expressly made conditional upon their having such power. It goes further, and expressly states that if they have no power to make the appointment, or are unwilling to appoint Armstrong, it shall not be treated as a resignation. The latter part of the communication is simply a declaration that relator will appoint Armstrong his deputy. It will thus be seen that if the board had the appointing power, the tender of resignation was conditional upon the appointment of Armstrong. But back of it all lies the proposition that the appointing power was not with the board, and anything it did could not affect the power reposed solely in the auditor. It may be thought that the act of the auditor in appointing was an acceptance of the resignation. The answer is that it was not addressed to him, was not so stated as to authorize him so to conclude, and relator might not have been willing to resign if the appointment of a successor was to be made by the auditor. The fact that it was not so addressed is an important factor. Besides, the

auditor could not accept it except upon the terms made by it. He must receive it, if at all, upon the terms stated. If it be said that relator could not attach conditions to his resignation, the result would be that there was no resignation, besides the conditions are not in themselves unlawful.

10. Contracts between persons whereby a public officer agrees to resign his office in another's favor, or to give another a chance of promotion or appointment, are void as against public policy, and cannot be enforced at the instance of either party; and we apprehend that the making of such would be good ground for removal of an officer at the instance of the State; but this could only be upon a showing of a corrupt bargain, such as the law inhibits. And while there was an attempt in this case to show an agreement between relator and Armstrong by which some consideration was to move to relator, for resigning, in order that Armstrong might be appointed, it wholly failed, and the evidence is wholly insufficient to establish a resignation. It results that the act of the board of commissioners was void, and the appointment of appellee likewise void.

The court below permitted appellee to show on cross-examination of Armstrong that after his alleged appointment, 11. Armstrong had made proposals to others to resign his rights for a stipulated sum. This was unauthorized by, and unknown to, relator, and was clearly inadmissible against him upon any theory of the cause or of the law.

The judgment is reversed, with instructions to the court below to sustain the motion for a new trial, and for further proceedings in accordance with this opinion.