## MOTES *v.* DAVIS.

No. 12925. SEPTEMBER 15, 1939.

*Joseph B. McGinty*, for plaintiff.

DUCKWORTH, Justice. ■ "There shall be two constables in each militia district of the several counties elected by the people of each district, who shall hold their offices for four years unless sooner removed." Code, § 24-801. Justices of the peace shall be elected quadrennially on the first Saturday in December, for terms of four years beginning January 1, following their election. § 34-2701. "Constables shall be elected at the same place and by the same class of voters as justices of the peace. The elections for constables shall be held quadrennially on the first Saturday in December, for terms of four years beginning on January 1 following their election." § 34-2705. That the law fixes the term of office of a constable at four years, and not two years, is not open to question. That the time fixed by law for holding such elections is on the first Saturday in December, when justices of the peace are elected, is likewise certain and not open to question. The uncontradicted evidence shows that Motes was elected as constable on the first Saturday in December, 1936, at the time and place for holding elections for justices of the peace. His election was at the time and in the manner provided by law. His term of office is fixed by law, and is for four years, and does not expire until December 31, 1941. The uncontradicted evidence shows that he took

686

the oath of office and gave the official bond required of him by the Code, §§ 24-804, 24-811. Having done all this, he was entitled to the certificate of the ordinary to that effect, as provided by § 24-812; and although the ordinary's certificate incorrectly stated that he was elected for a term of two years, and this certificate constitutes his commission, the recital therein did not and could not have the effect of changing the length of his term. In such a conflict the law controls. See *McCants* v. *Layfield*, 149 *Ga.* 231 (3); *Bennett* v. *Public Service Commission*, 160 *Ga.* 189 (127 S. E. 612); *Moore* v. *Dugas*, 166 *Ga.* 493 (3) (143 S. E. 591); *Stephenson* v. *Powell*, 169 *Ga.* 406 (150 S. E. 641); *Wiley* v. *Douglas*, 168 *Ga.* 659 (148 S. E. 735). Respondent makes no claim to the office involved upon the basis that he was either elected at the regular election in 1936, or that he has been appointed by a justice of the peace as provided by the Code, § 24-806. He therefore shows no legal basis for his claim to the office, and thus nothing to support the judgment refusing to oust him therefrom which is excepted to.

■ But it is contended that the participation of relator as a candidate in the void election held in December, 1938, at which respondent received the highest vote, estops him from now attacking the validity of that election. "Presumptions of law are sometimes conclusive, and an averment to the contrary shall not be allowed. These are termed estoppels, and are not generally favored. Among these are . . solemn admissions made in judicio, and other admissions upon which other parties have acted, either to their own injury or the benefit of the persons making the admissions; and similar cases where it would be more unjust and productive of more evil to hear the truth than to forbear the investigation." Code, § 38-114. The party against whom an estoppel is sought here was a public officer whose term of office as fixed by law did not expire for two years. Either he occupied the office or he had vacated it. The ways whereby he could vacate the office are not unknown, but are clearly and definitely prescribed by law. If the office had not been vacated in a manner which the law provides, then under the facts in this case he was the legal occupant thereof when the alleged election was held in 1938. The Code, § 89-501, declares that all offices in the State shall be vacated by (1) death, (2) resignation, (3) judgment, (4) incapacity, (5)

non-residence, (6) failing to obtain commission or give bond, or (7) abandonment. There is no evidence in this record that remotely intimates that relator had vacated his office in any of the ways prescribed by law. Accordingly it must be held that he was in the office, performing its duties, with two years remaining of his regular term, when the alleged election of 1938 was held. As such he was not only entitled to the peaceable possession and enjoyment of the office, but he was charged with a solemn duty and responsibility to the people of his district. The public had a legal right to demand of him that he perform the duties of his office. Code, § 89-105. A contract whereby a public officer agrees to resign in favor of another, or otherwise to benefit another, is void as against public policy. The public interest can not be affected by actions of public officials beyond the scope of their powers as defined by law. See State *v.* Huff, 172 Ind. 1 (87 N. E. 141, 139 Am. St. R. 355); Martin *v.* Francis, 173 Ky. 529 (191 S. W. 259, L. R. A. 1918F, 966); 22 R. C. L. 538; 46 C. J. 982. If by the intentional act of the officer he can not transfer the duty to perform the functions of his office to another, because of the rights and interest of the public, this sound principle will not be nullified by a rule of law that would accomplish that result where the officer had no such intention. If relator could not by contract or agreement relinquish his office and confer the title thereto upon respondent, because such a transaction would disregard the public interest therein, then nothing that he could do without such intention could result in removing him unwillingly from the office and installing respondent therein, so long as he failed to vacate the office in a manner prescribed by law. To hold otherwise would mean to change the principle universally accepted that "public office is a public trust" to mean that public office is for private pleasure and profit. The office of constable was created by law, not for the purpose of enabling individuals to enjoy the honor and profits of being constable, but for the purpose of enabling the public to receive the services that the office requires. The office belongs to the people, and no one can occupy it without conforming to the requirements prescribed by the people through legislative enactment. This means that no agreements of individuals, nor acts of officials, can have the effect of ousting the legally qualified officer, unless they conform to the law applicable

in such cases. "Powers of all public officers are defined by law, and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of a power not conferred." Code, § 89-903.

Respondent relies upon *Dorsey* v. *Ansley, 72 Ga.* 460, as authority for the contention that relator is estopped to deny the validity of the election held in 1938 at which respondent claims to have been elected, because of the fact that relator participated therein as a candidate for the office of constable and was defeated. The facts in that case clearly distinguish it from the instant case. There the regular term of office as fixed by law had expired, and the election was held for the selection of officers for the new term. There neither the relators nor the respondents claimed the offices involved by virtue of their previous election in the manner prescribed by law and for a term that had not expired. There all contestants sought entrance to the offices by virtue of their having received the highest votes at alleged elections held on dates admittedly different from the date prescribed by law; and all of the relators, save one, were the officials who called the election under attack. In such circumstances this court held relators estopped. Here the relator is shown to have been duly elected and qualified as constable, and his term has not expired. His claim to the office is based, not upon a void election, but upon an admittedly valid one. The alleged election of 1938 neither weakens nor strengthens his title to the office. Had he received the highest vote at that election, it would have added nothing to the title he already held to the office. Although at first he advised the ordinary to call the election, he later informed the ordinary that his term ran for two more years, and asked him not to hold the election. Being distinctly different on its facts, the present case is not controlled by *Dorsey* v. *Ansley*, supra. Under the facts as shown by the record, the relator not only had the right to attack the election at which the respondent claimed to have been elected, and to seek to oust him from the office, but it was his duty to oust respondent that he might render the services demanded of him by law in behalf of the public. The evidence demanded a judgment ousting the respondent.

*Judgment reversed. All the Justices concur.*