## Board of School Commissioners of the City of Indianapolis *v.* State ex rel. Bever.

[No. 26,601. Filed December 23, 1936. Rehearing denied February 24, 1937.]

*Albert Baker, Joseph J. Daniels* and *G. R. Redding,* for appellant.

*Fred Barrett, Charles F. Remy, William H. Remy* and *Francis M. Hughes,* for appellee.

FANSLER, J.—This is an action by which appellee sought and procured a judgment mandating appellant to reinstate relatrix as a tenure teacher in the Indianapolis schools.

Error is assigned upon the overruling of a motion for a new trial.

The material facts alleged in the complaint are that the relatrix is a permanent teacher in the Indianapolis schools by virtue of the Teachers' Tenure Law (§28-4307, Burns' Ann. St. 1933, §6003 Baldwin's 1934); that the defendant "unlawfully, unreasonably, wrongfully and arbitrarily attempted to cancel, terminate and repudiate" her contract by "adopting an order to the effect that its relation with the relatrix be terminated," without any notice to relatrix, and that she was given no opportunity for a hearing or to present testimony; that there was not then, and never was, any legal cause for canceling her contract. There was an answer that relatrix had resigned. The facts were stipulated and are not in controversy, and it is said by appellee that "the sole question to be decided by the court is whether or not the facts stipulated by the parties show a 'voluntary cancellation' of her indeterminate contract."

On May 28, 1930, the relatrix received the following communication, addressed to her, signed by the acting superintendent of schools:

"The quality of your work has been such that there is no place in which we can use you.
"If you care to have your record show that you resigned, your resignation will be accepted."

On June 9th she addressed the following communication to the acting superintendent of schools:

"It has occurred to me that there might be a board meeting Tuesday with a publication of appointments Wednesday. I would prefer that my name appear under resignations rather than under a list as being dropped if it is necessary.

"I have been hoping that you would reconsider and that I might hear from you after you received Miss MacArdle's letter.

"I will appreciate it if you will let me know."

On June 13th the communication was reported to the board of school commissioners assembled in meeting, and was treated, and accepted, and entered upon its records, as a resignation by the relatrix, and the secretary of the school board addressed the following communication to the relatrix: "Having left the service of the Indianapolis Schools, you should consult the Indiana State Teachers' Retirement Fund, Room 224 State House, in regard to your relations to the pension fund." On August 1st the relatrix applied for and received from the assistant superintendent of schools a certificate that she "had left the services of the public schools," and she thereupon filed an application with the trustees of the Teachers' Retirement Fund for repayment of her contributions to that fund, which she received. The application for the funds recited that she had "left the services of the public schools in the State of Indiana," and that she did not intend to return.

There is much in appellee's brief concerning litigation then pending in which the constitutionality and effect of the Teachers' Tenure Law was in controversy, but the understandings, contentions, or beliefs of the parties, correct or incorrect, regarding the effect of the Teachers' Tenure Law, or its constitutionality, or the rights, powers, or duties of the parties, can in no way influence or affect the questions presented. Rights of parties under their contracts must be determined upon the theory that they knew and correctly interpreted the law affecting their interests. If

they compromise, cancel, or abandon their contracts under a misapprehension as to the rights or remedies which the law may afford them, the law will not reinstate the contracts upon discovery of their misapprehension and proof of their mistake. If it were otherwise there would be intolerable uncertainty as to the effect of agreements concerning contracts. Compromises would be unsafe and inconclusive, and finality of settlement could only be achieved by resort to the courts and a legal adjudication of rights. It is appellee's contention that the relatrix did not resign, and that if she did it was not voluntary. The relatrix must be treated as though she understood the Teachers' Tenure Law, and her rights under her contract, and there is nothing to indicate that she did not. At the time she received the communication from the acting superintendent of schools she understood that her contract could not be canceled without her consent unless and until a hearing was had after notice to her. The communication addressed to her clearly indicated that her services would be dispensed with because of the quality of her work, which would seem to indicate incompetency or neglect of duty. She was tendered the opportunity of resigning as an alternative to being dismissed. There is nothing in the communication to indicate that she would not have had notice and a hearing had she chosen not to resign. There is nothing in the facts stipulated indicating that the school board had taken any official action looking toward her dismissal at the time the letter was written. There is nothing in the statute which prevented her from resigning, or which required the school board to conduct a hearing upon the question of the cancellation of her contract if she was willing to resign. If she believed her work was such as to entitle her to continue as a teacher, she could have refused to resign. Then it would have been necessary to conduct a hearing

after notice to her and with an opportunity for her to be heard. She did not do this, but, answering the communication, indicated a desire that her "name appear under resignations," rather than under a list of teachers who were dropped. Of course, her name could not appear on the records of the school board under "resignations" if she had not resigned. It may be that she preferred resignation to a hearing upon her record, but, whatever her motive, she had the right to choose, and the communication can only be interpreted as a choice of resignation rather than termination of her tenure by action of the school authorities. On August 1st she applied to the school authorities for, and received, a certificate that "she had left the services of the public schools," and filed the certificate together with an application for repayment of her contributions to the Teachers' Retirement Fund.

The contention that her resignation was not voluntary finds no support unless it be in the fact that the communication from the school authorities amounted to a threat to remove her and cancel her contract because of the quality of her work. But a notice that a contract will be canceled for good and legal cause cannot be construed as a threat and made the basis of a charge of coercion or duress. The school authorities had a legal right to determine whether her services were satisfactory, and, if they were not, the right to prefer charges, and to remove her if the evidence warranted. They had the undoubted right to apprise her of their intention in advance, and to tender her the opportunity of canceling her contract and resigning. This they did. Their action is as readily attributable to courtesy and consideration for her feelings as to an improper motive. In fact, there is nothing to indicate any impropriety on the part of the school officials. They need not have threatened; charges might have

been preferred, and notice served, and a hearing conducted.

The facts are not in dispute; the rights of the parties clearly appear.

Judgment reversed, with instructions to enter judgment for appellant.

## ON PETITION FOR REHEARING.

FANSLER, J.—On petition for rehearing, appellee earnestly contends that the record in other cases, of which this court will take knowledge, and of which the trial court had knowledge at the time of the decision, established the fact that the school board was claiming the right to dismiss the relator, or any other teacher, without a hearing, and regardless of whether or not there was cause as defined in the Teachers' Tenure Law, and that, in view of this fact, the notice to her must be treated as intended to be an arbitrary dismissal. But, if this be granted, it does not help the relatrix. Whatever the intention of the board, or its view of the law, she had the right to a hearing before dismissal, which she could have insisted upon. For what length of time she could have acquiesced in the action of the board and refrained from challenging the lawfulness of its action, is a question which is not presented by the record. But, by her letter, she clearly invited the board to make its record show that she had resigned. Her communication is a clear indication of a desire that, if the board had not reconsidered its decision, that "there is no place in which we can use you," she might be treated as having resigned; and, without regard to whether she would still be in a position to assert her right under the Tenure Law, under other circumstances, she is not in a position to reconsider her decision to resign for the purpose of asserting rights now that she did not assert then.

Petition for rehearing denied.

DISSENTING OPINION.

TREANOR, J., dissenting: I see no legal grounds for reversing the judgment of the Marion Superior Court. Its decision was supported by sufficient evidence and was not contrary to law. The relatrix was justified in understanding that the first communication of the school board to relatrix was intended as an arbitrary dismissal of relatrix; and it is clear that relatrix's reply was intended merely to avoid the embarrassment of having a public announcement that she had been "dropped." Her letter did not indicate that she was willing to resign rather than to submit to a lawful proceeding for cancellation of her contract. But it did clearly indicate that if it were necessary for her to choose between a public announcement that she had been "dropped" and one that she had resigned, she preferred that the public announcement state that she had resigned. All of her subsequent conduct was consistent with her belief that the school board had arbitrarily refused to permit her to continue her teaching. The fact that she temporarily refrained from challenging the unlawful action of the school board and assumed that she would not return to her teaching service, and evidenced this state of mind by severing her relations with the Teachers' Retirement Fund is not convincing evidence that she had resigned her teaching position. The trial court reasonably could have concluded that her mental attitude was that she preferred to submit to the unlawful action of the board rather than to engage in a public controversy. That is a far different mental state than intending to resign rather than submit to a formal hearing on the question of cancellation. She did not lose any rights against the Board of School Commissioners by temporarily refraining from insisting upon these rights unless the time element is material; and there can be no serious contention that relatrix had lost any of her rights by reason of delay in enforcing them.

In view of the evidence which was before the trial court I think that his conclusion that the relatrix did not voluntarily cancel her contract is more reasonable than the conclusion reached by the majority of this court.