IRENE JOYCE, ET AL. *v.* HANOVER COMMUNITY SCHOOL. CORP., ET AL.

[No. 970A161. Filed December 21, 1971. Rehearing denied January 31, 1972. Transfer denied September 20, 1972.]

*Saul I. Ruman,* of Hammond, for appellants.

*Dennis J. Stanton,* of Crown Point, for appellees.

LOWDERMILK, J.—The plaintiffs-appellants in this action contended the defendants-appellees unlawfully terminated plaintiffs-appellants contracts to teach school in the defendant-appellee school corporation, in violation of Ind. Ann. Stat. §§ 28-4511, 28-4512, 28-4517 and 28-4518 (Burns 1970 Replacement).

Plaintiffs-appellants also contend that they were terminated as school teachers in violation of their individual written contracts as teachers and in violation of their agreement with the defendants-appellees pertaining to the 1969-1970 school year. They assert and further complain and contend that the defendants-appellees violated the collective bargaining agreement entered into between the teachers and the defendants-appellees school corporation on the 8th day of September, 1969, and the consent election agreement of the 7th day of November, 1969, in that said defendants-appellees did, in bad faith, refuse to proceed with negotiations of a master contract with the Hanover Township Federation of Teachers, as agreed to in the collective bargaining agreement and in the consent election agreement.

Plaintiffs-appellants included tenure and non-tenure teacher members of the Hanover Township Federation of Teachers, which teachers now contend that their contracts as teachers were terminated in violation of the aforesaid statutes.

The twenty-two appellants, plaintiffs herein, joined in a suit with nine other teachers of the defendant-appellee school corporation, in a suit filed in the United States District Court at Hammond, Indiana, charging discrimination against the plaintiff by the defendants in connection with plaintiffs' union activities.

The teachers referred to above as "nine other teachers" were members of the negotiating committee elected to such

committee by the Hanover Township Federation of Teachers of the defendant-appellee school corporation.

The Federal District trial judge determined and adjudged that the "nine other teachers" had taught in the Hanover Community School Corporation under contracts for the year of 1969 through 1970. Some were tenure, having taught more than five years, and some were non-tenure, having taught less than five years. The 22 teachers now in the present litigation claimed the Federal Court had jurisdiction under the two Civil Rights Acts 42 USCA § 1983 and 28 USCA § 1343 (3) and (4), both of which require a showing of a deprivation of a Federal Constitutional and Statutory Right. The contentions of these plaintiffs that the school board's action violated state law or constituted a breach of a duty to bargain in good faith raises issues cognizable in state courts, but fail to present a Federal question. Therefore, the Federal Court had no jurisdiction over the subject matter of the claim of the 22 teachers listed above, and the action must be dismissed as to them.

The Federal Court further held the other nine parties plaintiff were to be continued in their employment with the defendant school corporation until properly notified of the termination of their employment.

We must determine if the teachers, tenure and non-tenure, by not executing and returning the proferred contracts for the 1970-1971 school year, received by them on April 28-29, on or before June 1, was an act of resignation on the part of the said teachers.

The copy of the minutes sent to the teachers by the superintendent of the defendant-appellee gave the teachers an ultimatum, "failure to return to the Superintendent the regular teacher contract *on or before June 1, 1970,* will be considered as notice that the teacher is waiving all further employment rights with the school corporation."

The appellants contend that defendants-appellees discharged

the tenure and non-tenure teachers in violation of Burns §§ 28-4308; 28-4312A; 28-4312C; 23-4321, in that said statutes provide that tenure teachers may only be terminated by notice and hearing, which was not done, and that non-tenure teachers may only be terminated if terminated by notice before May 1, which was not done, and the court's decision was contrary to law.

This specification of error and contention of the plaintiffs-appellants raises the question "Did the failure of the tenure and non-tenure teachers to comply with the notice and directive so sent to them by the school board amount to a resignation on the part on the teachers—tenure and non-tenure?"

This court, in order to answer the above question, must first determine *what is a resignation?*

C.J.S. 77, p. 311, defines "resignation" as follows:

"RESIGNATION. It has been said that 'resignation is a term of legal art, having legal connotations which describe certain legal results. It is characteristically the voluntary surrender of a position by the one resigning, made freely and not under duress, and the word is defined generally as meaning the act of resigning or giving up, as a claim, possession, or position. * * *'"

*State, ex rel. McGuyer* v. *Huff* (1909), 172 Ind. 1, 87 N. E. 141, is a case where the appellee therein was appointed on January 29, 1907, to the office of assessor of Martin County, Indiana, which appellee claims the relator had been duly elected such assessor and duly discharged his duties until December 15, 1906, "at which said time he voluntarily abandoned said office and left the State of Indiana, with the avowed purpose of remaining away permanently," and appellee's appointment was to fill the unexpired term of the relator.

Relator's resignation was directed to the Board of Commissioners of Martin County and therein relator certified that he was assessor of Mitcheltree Township, and did thereby ask the Commissioners to appoint Robert C. Armstrong as his successor as assessor of said township. It further stated that

if they could not appoint him as relator's successor, that relator declined to resign and would have him appointed as his first deputy.

Armstrong was appointed and qualified and relator removed from the state. At the time of Armstrong's appointment he was ineligible, the office was declared vacant and Huff was appointed to fill the unexpired term of relator and qualified and so held the office.

Relator went to California and on February 18, 1907, wrote the County Auditor that he would be back and resume his work on March 1st.

The evidence showed that the relator had gone to California on account of his health, and to visit the grave of a soldier brother killed in the Philippines, which latter was his primary purpose. He had no official duties to perform between December 15, 1906 and March 1, 1907.

The court determined that relator's absence was only temporary; was with a fixed purpose of returning not only to his residence but to his official duties. There was no evidence to sustain the theory of abandonment of the office, as temporary absence is not sufficient.

The court further said:

> "In order to constitute a resignation, it must be unconditional, with intent that it shall operate as a resignation. *State* v. *Clarke* (1867), 3 Nev. 566; *State, ex rel.,* v. *Fitts* (1875), 49 Ala. 402.
>
> " 'To constitute a complete and operative resignation, there must be an intention to relinquish a portion of the term of office, accompanied by the act of relinquishment. Webster and Richardson defined the words "resign" and "resignation" substantially thus: To resign, is to give back, to give up, in a formal manner, an office; and resignation is the act of giving it up. Bouvier says, resignation is the act of an officer by which he declines his office, and renounces the further right to use it.' "

The case of *Board of School Commrs.* v. *State ex rel. Bever* (1936), 211 Ind. 257, 5 N. E. 2d 307, is an action by the

state on the relation of Ruby M. Bever against the Board of School Commissioners of the city of Indianapolis to compel reinstatement of plaintiff Bever as a tenure teacher in the schools of Indianapolis.

The plaintiff was a permanent teacher in the Indianapolis schools by virtue of the Teachers Tenure Law, Burns § 28-4307, and she claims the defendant unlawfully, unreasonably, wrongfully and arbitrarily attempted to cancel, terminate and repudiate her contract "by adopting an order to the effect that its relation with the relatrix be terminated" without any notice to relatrix and that she was given no opportunity for a hearing or to present testimony that there was not then nor ever was any legal cause for cancelling her contract.

The answer filed was that the relatrix had resigned. The facts were stipulated and were not in controversy and it is said by appellee that "the sole question to be decided by the court is whether or not the facts stipulated by the parties show a 'voluntary cancellation' of her indeterminate contract."

On May 28, 1930, the relatrix received a communication addressed to her, signed by the acting superintendent of schools, as follows, to-wit:

"The quality of your work has been such that there is no place in which we can use you.

"If you care to have your record show that you resigned, your resignation will be accepted."

On June 9 the relatrix addressed the following communication to the acting superintendent:

"It has occurred to me that there might be a board meeting Tuesday with a publication of appointments Wednesday. I would prefer that my name appear under resignations rather than a list as being dropped if it is necessary.

"I have been hoping that you would reconsider and that I might hear from you after you received Miss MacArdle's letter.

"I will appreciate it if you will let me know."

On June 13 the communication was reported to the Board of School Commissioners assembled in meeting and was treated, and accepted, and entered upon its records, as a resignation by the relatrix, and the secretary of the school board addressed the following communication to the relatrix: "Having left the service of the Indianapolis Schools, you should consult the Indiana State Teachers' Retirement Fund, Room 224 State House, in regard to your relations to the pension fund."

On August 1, the relatrix applied for and received from the assistant superintendent of schools a certificate that she had "left the services of the public schools," and she thereupon filed an application with the trustees of the Teachers' Retirement Fund for repayment of her contributions to that fund, which she received. The application for the funds recited that she had "left the services of the public schools in the State of Indiana," and that she did not intend to return.

Appellee's brief concerned litigation then pending in which the constitutionality and effect of the Teachers' Tenure Law was in controversy, but the court held that the understandings, contentions, or beliefs of the parties, correct or incorrect, regarding the effect of the Teachers' Tenure Law, or its constitutionality, or the rights, powers, or duties of the parties could in no way influence or affect the questions presented. The court further held that the rights of the parties under their contracts must be determined upon the theory that they knew and correctly interpreted the law affecting their interests.

The relatrix contended that she did not resign, and if she did it was not voluntary. The court held she must be treated as though she understood the Teachers' Tenure Law and her rights under the contract and there was nothing to indicate she did not.

"* * * The communication addressed to her clearly indicated that her services would be dispensed with because of the quality of her work, which would seem to indicate incompetency or neglect of duty. She was tendered the oppor-

tunity of resigning as an alternative to being dismissed. There is nothing in the communication to indicate that she would not have had notice and a hearing had she chosen not to resign."

Nothing appears in the facts stipulated that the school board had taken any official action looking toward her dismissal at the time the letter was written. The statute is silent on anything which would prevent her from resigning or which required the school board to conduct a hearing upon the question of the cancellation of her contract if she was willing to resign. If she believed her work was such as to entitle her to continue as a teacher she could have refused to resign. Then it would have been necessary to conduct a hearing after notice to her and with an opportunity for her to be heard. This she did not do, but in answering the communication indicated a desire that her "name appear under resignations" rather than a list of teachers who were discharged. She had a right to choose, and the communication can only be interpreted as a choice of resignation rather than termination of her tenure by action of the school authorities.

The court further held relatrix' contention that her resignation was not voluntary finds no support unless it be in the fact that the communication from the school authorities amounted to a threat to remove her and cancel her contract because of the quality of her work; and further held that a notice that her contract would be cancelled for good and legal cause cannot be construed as a threat and made the basis of a charge of coercion or duress.

The court found that the action of the school board in sending her the first notice was readily attributable to courtesy and consideration for her feelings as to an improper motive. There was nothing to indicate any impropriety on the part of the school officials. They need not threaten; charges might have been preferred and notice served and a hearing conducted. The judgment of the trial court was for the relatrix and was reversed by our Supreme Court, with instructions to enter judgment for appellant.

This case is readily and easily distinguishable from the case at bar. For in this case there was no coercion or duress; there was only a courtesy extended to her that she may resign, as her work was not satisfactory, which she chose to do rather than have notice and charges preferred. The evidence clearly disclosed that she much preferred to accept a courtesy notice and resign to save herself the embarrassment of being designated an incompetent teacher, which would necessarily follow from a notice and trial of a hearing to which she was entitled under the Teachers' Tenure Act as a permanent teacher.

This is evidenced by her subsequent correspondence with the officials of the school and by her making application to the Retirement Board stating that she had quit teaching. It would appear to us that the suit for reinstatement was an afterthought.

In the case at bar the School Board sent each and every teacher of the school system a contract the same as they had had the year before; subject to further negotiations for extracurricular work at the school. The notice which has heretofore been set out instructed the teachers that a failure to return a signed copy of the contract by June 1, 1970, would be considered a waiver of all employment rights.

To us, in the *Board of School Commissioners* v. *State ex rel. Bever, supra,* the court said communications addressed to her clearly indicated that *because of the quality of her work* they could not place her, and this would seem to indicate incompetency or neglect of duty, and in the case at bar, the board did, in our opinion, issue a mandate to each teacher in the school system to sign and return the proferred contract to the school board on or before June 1, 1970, and a failure so to do would be tantamount to a resignation by the teacher or teachers failing to return the signed contract within the allotted time. It must be further remembered that in the case at bar none of the teachers had indicated to the school board an intention to resign and give up their employment, while in the *Board of School Commissioners* v. *Bever, supra,*

that teacher was advised that because of the quality of her work there was no place in the school system where she could be used. They did not mandate or coerce her, but in the alternative, were considerate and said that if she cared to have her record show that she resigned that the school board would accept her resignation.

Within 12 days thereafter appellee Bever wrote the school board that she would prefer her name appear under resignations rather than under a list of teachers being dropped if it was necessary to drop her.

We must agree with the court that that termination of employment was voluntary and intentional.

In the case at bar none of the teachers returned the contract before June 1, 1970; on the contrary, on May 25, 1970, 22 teachers signed a letter to the school board stating they would not sign the contract as to do so would be a mere formality and they considered themselves employed as per their old contract (1968-1969).

It is readily ascertainable that the teachers in the case at bar did not resign and had no intention of resigning and the failure to comply with the school board's directive cannot be interpreted by the school board as a resignation, as such resignation must: (1) be voluntary and (2) be intentional.

Plaintiffs-appellants requested in an original action that they be reinstated as teachers and prayed that the court enjoin the defendants-appellees from non-renewal and termination of plaintiffs-appellants' teaching contracts and from non-renewal or termination of their extra-curricular activities and/or a temporary injunction and permanent injunction against the defendants-appellees terminating them and refusing to employ them under the same terms and conditions as they had worked in the prior year; that defendants-appellees be enjoined from bad faith negotiations and for damages, including attorneys' fees.

Further evidence discloses that on August 24th the plaintiffs agreed to sign the several contracts which were tendered on April 25 and 26, 1970, to each of them.

The uncontradicted evidence further establishes that the superintendent, Mr. Scamihorn, recommended the separate contract for employment and a separate contract for extra-curricular assignments, due to a directive from the State Board of Accounts, and that the form of the contract used is the one and only prescribed by the State of Indiana.

The evidence further establishes the reason for adopting the June 1, 1970 deadline was the Attorney General Opinion No. 21 of August 8, 1969.

The trial court granted plaintiffs a temporary restraining order to set the same for hearing, together with and at the same time that appellants' complaint for temporary and permanent injunctions was heard.

At the conclusion of the joint hearing on the injunction, etc., the court denied a request to dissolve the temporary restraining order against the defendants and took the matter under advisement. The court, after having been duly advised, then rendered its judgment, denying the plaintiffs an injunction, as follows, to-wit:

"This cause having been taken under advisement and the Court having deliberated on said matter made the following ruling at 2:10 P.M., the Court now dissolves restraining order against defendants and finds for defendants on plaintiffs complaint for permanent injunction and mandate.

"IT IS THEREFORE CONSIDERED, ADJUDGED AND DECREED by the Court that the restraining order against defendants is now dissolved and finds for defendants on plaintiffs complaint for permanent injunction and mandate.

"It is further ORDERED by the Court that the plaintiffs pay all costs due herein."

Plaintiffs timely filed their motion to correct errors, which motion consisted of 14 alleged errors, and which motion was

by the court overruled. The appellants have waived all the specifications of error except those they presented for review in their brief, which specifications are as follows:

1. Were the plaintiff teachers terminated in violation of the statutes of the State of Indiana and contrary to law?

2. Were the plaintiff teachers terminated by the defendants in violation of their individual contracts with the defendant school corporation and contrary to law?

3. Were the plaintiff teachers terminated in violation of the collective bargaining agreement with the defendants and contrary to law?

4. Did the defendants violate the collective bargaining agreement to negotiate a master contract in good faith and contrary to law?

5. Did the trial court commit prejudicial error in its admission of evidence?

This cause was tried to the court without a jury.

Inasmuch as the determination of this case will be of great interest to a large class of people in Indiana, we shall, in order to make the same more understandable, set out Burns §§ 28-4512 and 28-4517. The statutes are as follows:

IC 20-6-12-2 Ind. Ann. Stat. § 28-4512 (Burns 1970 Replacement):

"28-4512. Permanent teachers and indefinite contracts—Cancellation of contract—Hearing, causes and procedure—Effective date.—Any indefinite contract with a permanent teacher as defined in section one [§ 28-4511] of this act may be cancelled only in the following manner: Not less than thirty [30] days nor more than forty [40] days before the consideration by any such school corporation of the cancellation of any such contract, such teacher shall be notified in writing of the exact date, time when and place where such consideration is to take place; and such teacher shall be furnished a written statement of the reasons for such consideration within five [5] days after any written request for such statement; and such teacher shall, upon written request for a hearing, filed within

fifteen [15] days after the receipt by said teacher of notice of date, time and place of such consideration, be given such a hearing before the school board of such school corporation; such hearing shall be held not less than five [5] days after such request is filed and such teacher shall be given not less than five [5] days' notice of the time and place of such hearing. Such teacher, at the hearing shall have a right to a full statement of the reasons for the proposed cancellation of such contract, and shall have a right to be heard, to present the testimony of witnesses and other evidence bearing upon the reasons for the proposed cancellation of such contract. No such contract shall be canceled until the date set for consideration of the cancellation of such contract; nor until after a hearing is held, if such hearing is requested by said teacher; nor until, in the case of teachers, supervisors, and principals, the city or town superintendent shall have given the school corporation his recommendations thereon, and it shall be the duty of such superintendent to present such recommendations upon five [5] days' written notice to him by such school corporation. Nothing contained in this section shall prevent the suspension from duty of any teacher pending a decision on the cancellation of such teacher's contract. Cancellation of an indefinite contract of a permanent teacher may be made for incompetency, insubordination (which shall be deemed to mean a wilful refusal to obey the school laws of this state or reasonable rules prescribed for the government of the public schools of such corporation), neglect of duty, immorality, justifiable decrease in the number of teaching positions or other good and, just cause, but may not be made for political or personal reasons; Provided, That when the cause of cancellation of an indefinite contract is immorality or insubordination, as defined in this act [§§ 28-4511—28-4516], such cancellation shall go into effect at once; And, provided further, That when the cause of cancellation of an indefinite contract is not immorality or insubordination, as defined in this act, such cancellation shall go into effect at the end of the school term following such cancellation. The school board of any such school corporation, by a majority vote, evidenced by a signed statement in the minutes of the board, may cancel an indefinite contract with a teacher after compliance with the provisions of this section; Provided, That the decision of the school board shall be final. [Acts 1927, ch. 97, § 2, p. 259; 1933, ch. 116 § 2, p. 716.]"

and Ind. Ann. Stat. § 28-4517 (Burns 1970 Replacement) :

"28-4517. Continual contracts—Automatic renewal—Cancellation—Notice—Hearing—Mutual agreement—Permanent teachers and indefinite contracts law.—Every contract of employment hereafter made by and between a teacher and a school corporation, except contracts with permanent teachers as defined in chapter 97 of the Acts of 1927 [§§ 28-4511—28-4516] and acts amendatory thereof, shall be renewed and continue in force on the same terms and for the same wages, unless increased by the provisions of chapter 101 of the Acts of 1907 and acts amendatory thereof, known as the Teachers' Minimum Wage Law, for the school year next succeeding the date of termination fixed therein unless on or before the first day of May, the teacher shall be notified by the school corporation in writing delivered in person or mailed to him or her at last and usual known address by registered mail that such contract will not be renewed for such succeeding year or unless such teacher shall deliver or mail by registered mail to such school corporation his or her written resignation as such teacher or unless such contract is superseded by another contract between the parties. Superintendents, principals, and supervisors shall be deemed to be teachers within the meaning of this act [section].

"Any teacher who shall be refused continuation of contract pursuant to the provision of this act [section] may request from the trustee or board of trustees a written statement showing reason for such dismissal.

"After August 15 any teaching contract entered into between a school corporation and a teacher shall be void if the teacher, at the time of signing said contract, is bound by a previous contract to teach in the public schools, except that another teaching contract may be signed by a teacher to become effective on the furnishing to the township trustee or a board of school trustees of a release by the employers under the first contract, or after proof has been shown that the notice as required under this section has been given the first employers. A teacher may on twenty-one [21] days' written notice, delivered by the teacher to the school trustee or board of school trustees, or by mutual agreement in less than twenty-one [21] days be released from a teaching contract. A township or city school board may if it desires request a written statement from the teacher at the time of the signing of the contract as to whether another teaching contract has been

signed by the teacher, but failure to provide the statement shall not be a cause at a later date for voiding the contract.

"This act [section] shall be effective for all teachers employed in the public schools of the state of Indiana and all such teachers comprehended within the provisions of this act [section] shall be and are hereby granted all of the rights, privileges, and protections provided by this act [section] and on and after July 1, 1967, by the provisions of chapter 97 of the Acts of 1927 [§§ 28-4511—28-4516] and acts amendatory thereof the same as if they were teachers in cities and towns."

The case at bar confronts us with the determination of the contractual rights and obligations of tenure teachers on the one hand and non-tenure teachers on the other.

Our Supreme Court said, in *State ex rel. Clark* v. *Stout, Trustee* (1933), 206 Ind. 58, 187 N. E. 267:

"\* \* \* [I]n our opinion the Teacher Tenure Act is based upon the public policy of protecting the educational interests of the state and not upon a policy of granting special privileges to teachers as a class or as individuals. Consequently it should not be strictly construed as against relator but rather should be construed liberally to effect the general purpose of the Tenure Act since it is 'legislation in which the public at large are interested.' (*Board* v. *Davis* (1894), 136 Ind. 503, 36 N. E. 141)"

And, further, our Supreme Court, in the case of *Haas* v. *Holder, Trustee* (1941), 218 Ind. 263, 270, 32 N. E. 2d 590, said:

"\* \* \* By the great weight of authority, the rule seems to be that a tenure act does not preclude the employing agency from reducing the teacher's compensation below what is was before the breach occurred, so long as the salary to be paid equals or exceeds the minimum fixed by law and the teacher's classification for the purpose is not arbitrary nor unreasonable. *This is necessary in order that administrative officers may be free to exercise the sound discretion with which they are charged; so that the fiscal affairs of the school corporations may be adjusted in accordance with the ability of taxpayers to bear the burdens of the educational system; and to the end that the*

*tenure law may not itself be utilized to defeat the broad
public policy of the commonwealth. * * *"* (Our emphasis.)

Our Supreme Court has determined the Teachers' Tenure
Act (Burns § 28-4512) as evidenced by the cases cited imme-
diately above did not give a special class special privi-
leges but determined that the Act was for the benefit
of the public at large and was intended to make our
educational system a better and more efficient one.

It is in the light of this determination that the court con-
strues the tenure statute.

The statutes relied upon by the parties to the litigation
and which we must interpret require prerequisite steps be
taken by an employer (school corporation) to ter-
minate a tenure teacher's contract. These steps are
mandatory and are as follows:

1. Notification by the school corporation to the tenure
teacher by registered United States mail of termination of the
tenure teacher's contract not less than 30 nor more than 40
days before consideration by the school corporation.

2. Notification of the exact date, time and place where
such consideration is to take place.

3. No contract shall be cancelled until the date set for
consideration of the cancellation of such contract.

4. Cancellation may be made for insubordination (which
shall be deemed to mean a wilful refusal to obey the school
laws of this state or reasonable rules prescribed for the
government of the public schools of such corporation.)

5. The school board of such school corporation, by a
majority vote, evidenced by a signed statement of minutes of
the board may cancel an indefinite contract with a teacher
after the school board has complied with the provisions of
Burns § 28-4512, *supra,* provided that the decision of the
school board shall be final. (This making the decision of the
school board final can take place only after the school board

has followed each and every prerequisite step set out in the statute for the protection of the rights of the tenure teacher.)

6. The statute places the burden on the school corporation that its school board may not cancel a contract for political or personal reasons.

The differential between tenure and non-tenure teachers is defined by statute as follows, to-wit:

"28-4508 * * *

"The term 'teacher' as used in this act [§§ 28-4507—28-4510] shall be construed, in addition to other qualifications and prescriptions provided in chapter 231 of the Acts of 1945 [§§ 28-4507—28-4510] and other acts of the general assembly of the state of Indiana, to include all persons working in or for the kindergarten, elementary, and secondary grades of all schools of this state supported by public taxation heretofore and hereby required by law to secure the proper kind and grade of license as determined by the licensing board of the state department of education as a prerequisite to the performance of such work.

"28-4511. Permanent teachers and indefinite contracts—Terms and conditions—Uniformity.—Any person who has served or who shall serve under contract as a teacher in any school city corporation or in any school town corporation in the state of Indiana for five [5] or more successive years, and who shall at any time hereafter enter into a teacher's contract for further service with such corporation, shall thereupon become a permanent teacher of such school corporation. The term 'teacher' as used in this section shall mean and include licensed public school teachers, supervisors and principals of all such public school corporations, and licensed assistant superintendents and superintendents of such school corporations. Upon the expiration of any contract between such school corporation and a permanent teacher, such contract shall be deemed to continue in effect for an indefinite period and shall be known as an indefinite contract. Such an indefinite contract shall remain in force until such permanent teacher shall have reached the age of sixty-six [66] years unless succeeded by a new contract signed by both parties or unless it shall be canceled as provided in section two [§ 28-4512] of this act; Provided, That teachers' contracts shall provide for the annual determination of the date of beginning and length of school terms by the school corporation; and, Provided further,

That teachers' contracts may contain provisions for the fixing of the amount of annual compensation from year to year by a salary schedule adopted by the school corporation and such schedule shall be deemed to be a part of such contract; Provided, further, That such schedule may be changed by such school corporation on or before May first of any year, such changes to become effective at the beginning of the following school year; Provided, That all teachers affected by such changes shall be furnished with printed copies of such changed schedule within thirty [30] days after its adoption; And, provided further, That teachers['] contracts shall be uniform and of the form and wording as prescribed by the state superintendent of public instruction."

We shall now discuss this appeal as it affects tenure teachers.

For a school corporation, as employer of a tenure teacher, to terminate such tenure teacher's contract it is necessary, in fact mandatory, that all six of the above outlined requirements must be strictly adhered to by the employer school corporation.

This court, in order to determine whether the trial court's decision was correct or erroneous with relation to the tenure teachers involved herein, is required to first examine the record and determine if each requirement was strictly adhered to.

The defendants-appellees (employer) mailed by registered United States mail to the last and usual known address of all 67 of the school corporation's teachers, the proposed contract with a copy of the board's minutes of its last official meeting. Such mailing, on April 25 and 26, did notify all teachers of the school system that the minutes of the last official meeting of the board on April 21, 1970, was offering them a written teacher contract which was unsigned by the school board and was for study and consideration. A copy of the contract, along with a copy of the minutes so sent to each teacher further stated the specified salary amount, area of license field and a notation that if as a result of adjustment a salary

change should occur, the contract would be recalled and changed accordingly; and that the contracts shall be returned to the superintendent with the offer of employment accepted by June 1, 1970, and a failure to return to the superintendent the regular teacher contract on or before June 1, 1970, would be considered by the school board as notice that the teacher not so returning his or her signed contract to the school board by June 1, 1970, was waiving all further employment rights with the school corporation.

And, further, the minutes provided that all extra duty assignments will be made out on a separate extra-curricular agreement.

A copy of excerpts of the board's minutes of April 21, 1970, is in the words and figures as follows, to-wit:

"Plaintiffs' Exhibit No. 6:

"Hanover Community School Corporation
P. O. Box 423
Cedar Lake, Indiana 46303

Frank H. Stevens, President
Adolph H. Niemeyer, Vice-President
William C. Lueder, Secretary

Superintendent
Paul E. Scamihorn
Phone 219-374-8546

April 21, 1970

EXCERPT OF MINUTES OF BOARD MEETING

Resolution adopted by Board action on April 20, 1970

"I recommend to the school board, based upon the school board policy on the distribution of regular teaching contracts, that they hereby adopt a resolution that formally authorizes the issuance of regular teacher contracts based on the salary schedule in effect at the time of issuance and that the superintendent be instructed to carry out the above resolution.

This is to be done in order to provide teachers time to consider the offer of employment represented by the written regular teacher contract and permit the school board to determine staff needs. The following rules will govern the issuance and return of the regular teacher contracts

for the Hanover Community School Corporation for the 1970-71 school year:

1. Teachers will receive by certified mail regular written teacher contract, unsigned by the School Board, for study and consideration.
2. The regular teacher contract shall be returned to the superintendent with the offer of employment accepted by *June 1, 1970*. Failure to return to the superintendent, the regular teacher contract *on or before June 1, 1970* will be considered as notice that the teacher is waiving all further employment rights with this school corporation.
3. All extra duty assignments will be made out on a separate extra-curricular agreement.

———— \*\*\*\*\*\*\*\*\*\*\*\* ————

PLEASE NOTE!
If there are any errors in years of experience or degree held, teachers are asked to notify the superintendent immediately so that corrections can be made."

A copy of one of the tendered teacher's contracts, of which the rest are similar except as to the name of the teacher and the amount of pay, is in the words and figures as follows, to-wit:

Teacher's Copy

TEACHERS CONTRACT
(Official Form for Teachers of Public School Corporations As Prescribed by the State Superintendent of Public

Instruction. Revised 1962)
This Regular Contract between Hanover Community of Lake County, Indiana, hereinafter called employer, and Sharon Stannard a teacher who holds licenses issued by the Indiana State Department of Education as follows:

| Serial No. of License | Kind of Grade | Date and Issue | Date of Expiration | Grade Levels | Subjects Covered by License |
|---|---|---|---|---|---|
| | | | | K-6 | Elem. |
| | | | | | |
| | | | | | |

WITNESSETH: That in consideration of the agreements hereinafter contained, said teacher agrees to teach in the Public Schools of said School Corporation in such places, grades, and subjects as shall be designated by such employer subject to reasonable conditions of employment for the school year beginning Sept. 1, 1970, consisting of 9 months, and continuing until June 4, 1971. Said teacher agrees faithfully to perform all the duties of a teacher in said school; to use such text materials as are prescribed by said employer, and to observe all reasonable rules and regulations of the properly constituted school authorities; to attend and participate in the exercises of each institute or other teachers' meetings that may be provided for the teachers of said school corporation; to keep all records and to make all reports required by said employer and the laws of Indiana.

The employer agrees to keep the school building, equipment, and instructional and other necessary materials in good repair and to furnish all necessary materials and equipment and non-teaching employee service as may be necessary properly to conduct said school.

Said employer further agrees to pay the said teacher for his or her services under this contract as Teacher in licensed field of said school corporation the sum of *$9310 dollars per year for the period of contract. Said sum shall be deemed to constitute the annual compensation of the teacher as referred to in Chapter 329 of the Acts of 1955 as amended, the same being the teachers' supplemental retirement benefit system. Of said sum referred to above $_____ shall be paid in scheduled installments (semi-monthly) (monthly) as follows _____

_____

and the balance $_____due under this contract shall be paid by _____
(Name of School Corporation)

to purchase from the _____
(Name of Annuity Company or Agency)

a non-forfeitable annuity contract providing for payments in amounts, on dates, and to payees designated by the employee, provided that no payment is made in advance of the teacher having earned the compensation used to purchase such annuity. The employer shall continue to maintain such teacher, so long as regularly employed, on not less than

---

\* In the event a new salary schedule is adopted, etc., this contract will be recalled and re-adjusted. 6 yrs. exper. MS degree

the compensation as provided by and locally adopted salary and compensation schedule that may be in force and effect

All of the terms of Chapter 182 of the Acts of 1915 and acts supplemental thereto and amendatory thereof, commonly known as the Indiana Teachers' Retirement Fund Law, shall be in full force and effect with respect to said employer and said teacher.

It is agreed by the parties hereto that in case the said teacher should, after opportunity for hearing with benefit of legal counsel, be held by said employer to be guilty of incompetency, immorality, insubordination or other offense recognized as just cause according to law for cancellation of contract, such teacher, subject to proper appeal, shall be deemed to be dismissed and shall thereafter hold no claim for further compensation, subject, however, to the provisions of law concerning the employment and dismissal of teachers which are in force and effect. Revocation of license by the State Department of Education for any statutory reason shall be deemed to constitute incompetency under this contract.

It is further agreed by the contracting parties that in case the school is closed during the school year, and teachers are released from duty by order of the School Trusees, for reasons other than teacher meetings and school assignments, or if closed by order of the Health Authorities, or if through no fault of the teacher the school cannot be continued in session, the said teacher shall receive said teacher's regular payments during the time the school is so closed.

This contract is executed in duplicate this _____ day of _____, 1970, and each party has a copy thereof.

Hanover Community

Signed _____ _____
 (Teacher)

By _____ By _____

_____ _____

Approved: _____ _____
 (Superintendent) (School Corporation)

Signature of Superintendent signifies approval of this contract for purposes of classifying schools as required by the State Board of Education under the authority vested in said Board by Chapter 263 of the Acts of 1943.

The second requirement of the statute as to the exact date, time, when and place where such consideration was to take place was not given by written notice; therefore, the defendants-appellees failed to meet and comply with the second mandatory prerequisite to terminate the indefinite contract with respect to tenure teachers involved.[1]

The third requirement under the statute is that an employer may not cancel a contract until the date set for consideration of the cancellation, which date shall be set for not less than 30 days nor more than 40 days after the school board sends by registered mail its notice to the teacher that the school board will consider the termination of such teacher's contract.

The fourth requirement is one which relates to grounds for cancellation of a contract. It is our opinion that the refusal to sign a contract at a date later than required by the school corporation in order to allow an employer (school corporation) to know if the teaching position is open, or is not open, is a proper cause for the cancellation of the contract of the teacher refusing to answer in compliance with the school corporation's request. However, this could not apply to a tenure teacher in the instant case, as the school board had not followed mandatory prerequisite steps in discharging a tenure teacher.

The fifth requirement is that a school board may cancel a contract after the above six requirements have been met. However, a previous decision, arrived at by the school board before the date set for the consideration of a cancellation of the tenure teacher's contract is not sufficient. The decision of the board must necessarily follow each step as set out by

1. This being a case bearing on a matter of state-wide interest to school teachers, tenure and non-tenure, school boards and school corporations and the general taxpaying public, this court shall go further than is required to determine this case alone; we will discuss Burns § 28-4512 as well as other statutes which, in our opinion, control the matter of teacher's tenure rights and obligations and the rights and requirements under the statutes hereinabove set forth of the school boards and school corporations employing and dealing with tenure teachers.

the statute, which, in addition to the requirements above set out in this opinion, are that the tenure teacher may, after receiving the notice from the school board, within a 15 day period from the receipt of the notice, request from the school board two things, namely:

1. A written statement of the charges proferred against the tenure teacher, and

2. The tenure teacher may request a hearing which must be granted by the school board not more than five days from the time of the request for a hearing and the teacher is entitled to and the school board is required to give the tenure teacher at least five days notice before the hearing. Such tenure teacher shall have the right at the hearing to be heard, to present the testimony of witnesses and other evidence bearing upon the reasons for the proposed cancellation of such contract. This right granted to the teacher, does, in our opinion, carry with it the right for the teacher to be represented by counsel at the hearing.

The sixth requirement expressly provides that no contract shall be cancelled for personal or political reasons. This reqiurement that a contract may not be cancelled for personal or political reasons must necessarily be determined in a civil action in a court of law.

The contract and/or contracts on which this cause of action was based contained a paragraph which reads as follows, to-wit:

"It is agreed by the parties hereto that in case the said teacher should, after opportunity for hearing with benefit of legal counsel, be held by said employer to be guilty of incompetency, immorality, insubordination, or other offense recognized as just cause according to law for cancellation of contract, such teacher, subject to proper appeal, shall be deemed to be dismissed and shall thereafter hold no claim for further compensation, subject, however, to the provisions of law concerning the employment and dismissal of teachers which are in force and effect. Revocation of license by the State Department of Education for any statutory

reason shall be deemed to constitute incompetency under this contract."

Judge White of this court, in the case of *Tippecanoe Valley School Corp.* v. *Leachman* (1970), 147 Ind. App. 443, 261 N. E. 2d 880, wrote a well reasoned and sound opinion and passed on a teacher's contract containing the same paragraph as above set out. In quoting from the case of *School City of Crawfordsville* v. *Montgomery* (1933), 99 Ind. App. 526, 529, 187 N. E. 57, 58, which held "the contract itself expressly gives the teacher the right of 'opportunity for hearing with the benefit of legal counsel.'" This case was for unpaid salary claimed to be due the teacher who was discharged in the middle of the school term for insubordination. No demand was made for reinstatement of the teacher. Judge White held the evidence in the *Tippecanoe* case was sufficient to sustain an implied finding by the trial court that the procedure provided by the contract for the removal of the plaintiff from his position as teacher was not followed and that failure to follow it was a gross abuse of discretion. * * * The evidence was sufficient to sustain the implied finding that the school board's action was a breach of contract —a denial of the teacher's right to an opportunity for hearing with benefit of counsel.

"The school board had so far departed from the provided procedure that its action amounted to a gross abuse of discretion."

In the case at bar the notice by the school corporation to the tenure teachers was not sufficient, as it did not comply with the statutory requirements for the dismissal of a tenure teacher and such failure to comply with the statutory requirements did not require a tenure teacher to go forth with the burden of requesting a hearing for cause.

The evidence presented to the Indiana trial court, in our opinion, was sufficient for the court to find the school board's

action was arbitrary and capricious as it pertained to tenure teachers.

We next must consider the decision of the trial court as it relates to the non-tenure teachers and the interpretation of § 28-4517.

The heart of this issue is that portion of § 28-4517 which reads, in part, as follows:

> "28-4517. Continual contracts—Automatic renewal—Cancellation—Notice—Hearing—Mutual agreement—Permanent teachers and indefinite contracts law.—Every contract of employment hereafter made by and between a teacher and a school corporation, except contracts with permanent teachers . . . shall be renewed and continue in force on the same terms and for the same wages, . . . for the school year next succeeding the date of termination fixed therein unless on or before the first day of May, the teacher shall be notified by the school corporation in writing delivered in person or mailed to him or her at last and usual known address by registered mail that such contract will not be renewed for such succeeding year or unless such teacher shall deliver or mail by registered mail to such school corporation his or her written resignation as such teacher or unless such contract is superseded by another contract between the parties. . . ."

The evidence is uncontroverted that the non-tenure teachers were not notified prior to May 1, that their contract definitely would not be renewed the next succeeding year.

However, the evidence is also uncontroverted that each teacher was sent written notice by registered United States mail on or before May 1 at their last and usual known address that their contract would not be renewed unless it was signed and returned before June 1.

The question then poses itself as to whether the first mailing constituted "notice" that the teacher's contract would not be renewed and whether such notice was adequate.

Our previous comments with respect to § 28-4512 not being legislation for a special class is equally appropriate and true with relation to § 28-4517. (Non-tenure teachers.)

The statute does not require when the termination of the contract must take place. As can readily be seen the action of the school board in fact, gave the non-tenure teachers even more time to accept a contract for the ensuing year than the law required. We do not mean to say, however, that the school corporation can extend the termination-notice date as set in § 28-4517, *supra*. To the contrary, notice *must* be given on or before May 1. The employees here were notified that unless they signed a contract by June 1 their contracts would be terminated. They were notified of such a decision before May 1, which notification was sufficient. In this manner the non-tenure employees were given an additional thirty days in which to seek employment elsewhere since, if they signed the contract anytime before June 1, by the school board's own ruling they were re-hired and thereby precluded from executing a contract with any other school corporation.

To hold that a school board must give its employees no more than the minimum notice which the law requires would be illogical and unsound and would not conform to good business principles. Applying the above facts to § 28-4517, we necessarily determine the non-tenure teachers were not illegally terminated.

Having determined that the tenure teachers were illegally discharged and having further determined that the non-tenure teachers were not illegally discharged, we shall continue with a discussion of plaintiffs-appellants' three remaining allegations of error. The three remaining errors pertain to both tenure and non-tenure teachers.

Appellants' allegations of error 3 and 4 shall be grouped as one argument. The issue here raised is that of whether the teachers were terminated in violation of a collective bargaining agreement and did the employer violate the agreement by not bargaining in good faith.

Whether the employer bargained in good faith is a question of fact for the trial court. In view of the evidence and

*Indianapolis Education Association* v. *Lewallen* (1969), 72 LRRM 2071:

> "The gravamen of the complaint goes to the failure on the part of the defendants-appellants to bargain collectively in good faith. But there is no constitutional duty to bargain collectively with an exclusive bargaining agent. Such duty, when imposed, is imposed by statute. The refusal of the defendants-appellants to bargain in good faith does not equal a constitutional violation of plaintiffs-appellees' positive rights of association, free speech, petition, equal protection, or due process. Nor does the fact that the agreement to collectively bargain may be enforceable against a state elevate a contractual right to a constitutional right."

We cannot, therefore, as a matter of law, say that the trial court was in error in determining that the employer had bargained in good faith. It is only where the decision of the court is such that reasonable men, after considering evidence, would all come to but one and the same conclusion, which conclusion was contrary to the finding and judgment of the trial court, that such finding and judgment could be contrary to law. *Pokraka* v. *Lummus Co.* (1952), 230 Ind. 523, 104 N. E. 2d 669; *Pontious* v. *Littleton* (1970), 146 Ind. App. 369, 255 N. E. 2d 685.

As for the first contention that the teachers were terminated in violation of the collective bargaining agreement, we would again point out that this was a question to be determined mined from weighing the evidence by the trial court only, as this court cannot weigh the evidence. Since there is ample evidence to uphold such a judgment, we cannot reverse the court's decision. Again, see *Indianapolis Education Assn.* v. *Lewallen, supra,*

The last factor to consider is whether it was error for the trial judge, sitting without a jury, to hear evidence that the school board had already entered into contracts with other teachers to replace those who had refused to sign the contracts by June 1.

Appellants cite the case of *Ind. Union Traction Co.* v. *Hiatt* (1916), 65 Ind. App. 233, 114 N. E. 478, on the matter of the court permitting irrelevant evidence to go to the jury. The court held that as the whistle was on an interurban electric car and the expert witness testifying was a locomotive engineer and that "as the proper management of the locomotive engine was not involved in this action, it would seem, *prima facie*, that while the testimony complained of was erroneously admitted, it was immaterial." The court further said that if evidence is clearly immaterial its erroneous admission, as a general rule, is held to be harmless. And, further, the court said "but if testimony is directed to some issue or some material question involved in the controversy and its nature is such that it may have exercised some influence in determining such issue or question, its erroneous admission will be presumed to have been prejudicial, unless it otherwise affirmatively appears from the record."

Appellants' contention is that the trial court's permitting evidence into the record that replacement teachers had been hired prior to the trial was irrelevant and was prejudicial error.

Appellant further cited the case of *Terre Haute Gas Corp.* v. *Johnson* (1943), 221 Ind. 499, 45 N. E. 2d 484. The question there was the admission of hearsay evidence. The court, in passing on the admission of hearsay evidence, said:

> "Judgments will not be reversed on account of the admission of incompetent evidence not shown to have been harmful."

It is our considered opinion that the court's permitting the witness to testify that other teachers had been employed is immaterial and would have no bearing, nor would it influence the judgment of the trial judge, hearing the cause without a jury.

The statute requiring the trial judge to enter special findings of fact and conclusions thereon in all cases involving

injunctions, whether requested or not requested by the parties, was not complied with herein. However, in oral argument counsel for the respective parties each waived any error which might have been occasioned by the failure of the trial court to enter its special findings of fact and conclusions of law thereon and the same has not been considered in this opinion, and further, no injunction was issued and therefore the statute did not require the issuing of special findings of fact and conclusions of law thereon.

A non-tenure teacher may or may not be hired for a succeeding school year at the pleasure of the school corporation. It is solely within the sound discretion of the school corporation to determine if a non-tenure teacher shall be made a tenure teacher. In the event the school corporation does not desire the services and the return of the non-tenure teacher its only duty to the non-tenure teacher, as heretofore stated, is to give the non-tenure teacher a written notice at the teacher's last and usual known address by registered United States mail, such notice informing the non-tenure teacher that his or her services will be terminated and not needed for the next school year. Such notice to a non-tenure teacher, if given on or before May 1, by registered United States mail at his or her last and usual known address, is all that is required of the school corporation.

The non-tenure teacher, in the event he or she receives such notice by registered United States mail at his last and usual known address before May 1 has no right to consider his relation with the school corporation employer as terminated as of May 1. It is his or her obligation to fulfill the contract entered into for the present school year and he or she is obligated to complete teaching the rest and remainder of the current school year.

The record fails to disclose and name and distinguish the tenure teachers from among the 22 teachers plaintiffs-appellants who were tenure and who were non-tenure and, there-

fore, this court cannot designate and name the teacher in his or her capacity as tenure or non-tenure.

For the reasons hereinabove stated the dismissal of the tenure teachers is held to be contrary to law. All plaintiffs-appellants who are tenure teachers are ordered reinstated by the Hanover Community School Corporation at a salary of not less than the salary they were receiving in their contract for the school year 1969-1970, with the further right to negotiate for additional salary for extra-curricular work.

The court further orders and decrees that this cause be, and the same is hereby, reversed as to said tenure teachers and the Clerk is ordered and directed to remand this cause to the Judge of the Lake Superior Court, Room No. 1, for reinstatement of said tenure teachers and for all further proceedings pertaining to tenure teachers not inconsistent with this opinion.

And for the reasons hereinabove set forth the court finds no error in the refusal of the defendant-appellee school corporation to rehire non-tenure teachers and hereby decrees that this cause be affirmed as to all non-tenure teachers, plaintiffs-appellants herein.

Sullivan, P. J., concurs; Buchanan and Robertson, JJ., concur.

NOTE.—Reported in 276 N. E. 2d 549.