STATE EX REL. CLARK *v.* STOUT, TRUSTEE.

[No. 26,239.  Filed October 27, 1933.  Rehearing denied January 5, 1934.]

*Charles A. Lowe,* for appellants.

*V. J. McCarty* and *William L. Chambers,* for appellee.

TREANOR, J.—This was an action in mandate to compel the appellee as township trustee to certify to a transcript of the proceedings had before him wherein he cancelled the indefinite teaching contract of the relator as principal of the Whitewater Consolidated School, and to compel said trustee to take the necessary legal steps to permit the relator to perfect an appeal of said matter to the county superintendent of schools of Franklin County, Indiana. The cause was tried by the court without a jury upon an agreed statement of facts. The court found generally for the appellee and rendered judgment that the plaintiff take nothing by his complaint and for costs.

We think that the questions involved in this appeal are accurately set out by the appellee in the following statement:

"(1) Is appellant a permanent teacher? and (2) If appellant is a permanent teacher did he perfect his appeal from decision of trustee to county superintendent in a proper manner under the Teachers' Tenure

Act and the school laws of Indiana, so that trustee, appellee herein, should be mandated to approve appeal bond and file papers on appeal with the county superintendent of schools under said Section II of said Teachers' Tenure Law?"

The agreed statement of facts shows that the superintendent of schools did not at any time make a report upon appellant's "preparation, experience and license" and appellee urges that in the absence of such report relator did not become a permanent teacher. The pertinent sections of the Teachers' Tenure Act are sections 1 and 3, which are in part as follows:

"Sec. 1. Any person who has served or who shall serve under contract as a teacher in any school corporation in the State of Indiana for five or more successive years, and who shall hereafter enter into a teacher's contract for further service with such corporation, shall thereupon become a permanent teacher of such school corporation. The term "teacher" as used in this section shall mean and include licensed public school teachers, supervisors and principals of all public school corporations, and licensed assistant superintendents and superintendents of school cities and towns. Upon the expiration of any contract between such school corporation and a permanent teacher, such contract shall be deemed to continue in effect for an indefinite period and shall be known as an indefinite contract. . . . .

"Sec. 3. No teacher shall be appointed by any such school corporation in Indiana, and no teacher shall become a permanent teacher in any such school corporation, until the superintendent, in the case of school cities and school towns, and the county superintendent, in the case of townships, and school cities and towns not having superintendents, shall have made a report upon such teacher's preparation, experience, and license, and it shall be the duty of every such superintendent, within ten days after request, to make such report upon any person whom the school corporation is considering as an applicant: *Provided,* that nothing contained in

this section shall be deemed to prevent the granting to any superintendent of additional authority in the selection and employment of teachers either by law or by the rules or regulations of any school corporation.¹"

Section 1 purports to set out all the conditions precedent to a teacher's becoming a permanent teacher under an indefinite contract and the provisions of §2 seem to have been drawn upon the assumption that §1 is exclusive as to the requirements for a permanent teacher since its provisions apply to the cancellation of "any indefinite contract with a permanent teacher as defined in section 1 of this act."²

Consequently, in order to affirm the judgment of the trial court insofar as it rests upon §3 we must hold that §3 makes the report of the superintendent an additional condition precedent to a teacher's becoming a permanent teacher. It is clear that §3 contemplates that school boards and township trustees shall not appoint a teacher or cause a teacher to become a permanent teacher until they have had the advantage of a report on the "preparation, experience and license" of such teacher. It is also made the duty of superintendents to furnish such report "upon any person whom the school corporation is considering as an applicant." Since the school corporation, in the person of the school board or township trustee, would alone know who is being considered as an applicant the reasonable inference is that the request to a superintendent for such report must come from the corporation. Obviously the report should be made to the school corporation. If the report is a condition precedent to the exercise of the school corporation's power to appoint a teacher or to enter into an indefinite contract

Note 1. Acts of 1927, ch. 97, p. 259, §§6967.1, 6967.3, Burns Ann. Ind. St. Supp. 1929.
Note 2. Acts of 1927, ch. 97, p. 259, §6967.2, Burns, etc., Supp. 1929.

with a teacher it follows that a person with all the qualifications to teach in a particular position, who has entered into a contract in good faith, may discover. that his supposed contract is a nullity for the reason that the school board or township trustee and the school superintendent have failed to follow the requirements of §3. For example, in the instant case, the relator had taught more than five years in Whitewater School Township at the time the Teacher Tenure Act became law. Thereafter in the years 1927, 1928, 1929 and 1930 the appellant and Whitewater School Township entered into contracts for the ensuing school terms. If relator did not become a permanent teacher under the contract signed in 1927 he was not legally "appointed" as a non-tenure teacher since no report was made by the county superintendent upon appellant's "preparation, experience and license" at any time during those years. The parties acted in good faith yet, if appellee is correct in his construction of §3, the trustee of Whitewater Township illegally paid appellant for his services as teacher during the school years 1927-1931, and relator failed to become a permanent teacher although the facts of his case completely satisfied the requirements of §1 of the Tenure Act. In short, if the lack of a report upon appellant's preparation, experience and license prevented his becoming a permanent teacher the result was that the failure of the township trustee to follow the provisions of §3 nullified the plain intent and purpose of §1 and caused a great injustice to appellant. Such a result is undesirable but if §3, properly construed, requires such a result we must accept it. If, however, the language of §3 reasonably permits a construction which will avoid an unjust or undesirable result, or one that runs counter to the obvious general spirit and purpose of the Tenure Act then we should adopt this construction.

A careful study of the language of §3 convinces us

that it is intended to be advisory as to the respective duties of school boards or township trustees and ■ school superintendents. The purpose of §3 is not to qualify the power of school corporations, acting through their agents, to employ teachers or to enter into indefinite contracts with them, but rather to prescribe the manner of its exercise as between employing officials and school superintendents. That this was the understanding of the General Assembly is indicated by the following excerpt from that section:

"Provided, that nothing contained in this section shall be deemed to prevent the granting to any superintendent of additional authority in the selection and employment of teachers either by law or by the rules or regulations of any school corporation."

Appellant-relator has incorporated into the argument in his brief an opinion from the office of the Attorney-General which correctly construes §3. We quote the following with approval:

"Section 3 of the Tenure Act apparently places no further duty or requisite qualification upon the teacher to enable such teacher to enter into a teacher's contract. The duties growing out of section 3 of the Tenure Act are duties devolving solely upon the superintendent and the employing officials with a view of obtaining the skilled advice of the superintendent in the case of all employment contracts. Even so, however, the section must be treated as advisory only since no method is provided for enforcing it, unless it be to declare the teacher's contract invalid in the event the employing official fails to comply with the section by making the request for and receiving the advice as to the teacher's preparation, experience and license. I do not think it was the intention that a teacher with a duly registered license should thus be penalized for the failure of the employing official."[3]

Note 3. See Reports and Opinions, Attorney-General of Indiana, James M. Ogden, 1929-1930, p. 273, for full text of Attorney-General's opinion.

We grant that appellee's construction of §3 would be quite plausible if we could accept his preliminary assumption that the duty of requesting and obtaining a report upon his own preparation, experience and license rests upon the prospective teacher. In that case the failure of an applicant to obtain a valid contract or of a teacher to become a permanent teacher would have to be charged to the applicant or teacher and injustice of result would not be a factor in construing §3. Further if it were the intent of §3 to provide that no person could be appointed a teacher and that no teacher could become a permanent teacher unless such person or teacher should first request and receive the report in question we surely should be compelled to hold that such action by the person interested would be a condition precedent to his being legally appointed as a teacher or to his becoming a permanent teacher, even though such a result would qualify the unconditional provisions of §1. In reaching the conclusion that §3 places upon the applicant the duty of requesting the report appellee relies not so much upon the wording of the section as upon the rule of construction that "in dealing with legislation granting powers and privileges to individuals for their own advantage, courts are required to strictly construe as against such individuals." Such a rule has been recognized by this court. *Board* v. *Davis* (1894), 136 Ind. 503, 36 N. E. 141. But in our opinion the Teacher Tenure Act is based upon the public policy of protecting the educational interests of the state and not upon a policy of granting special privileges to teachers as a class or as individuals. Consequently it should not be strictly construed as against relator but rather should be construed liberally to effect the general purpose of the Tenure Act since it is "legislation in which the

public at large are interested." *(Board* v. *Davis, supra,* p. 511.)

The remaining question is whether appellant-relator took necessary steps to entitle him to appeal to the county superintendent. The provision in §2 covering appeals from a township trustee is as follows:

"Provided further, That the decision of the township trustee shall not become effective for ten days, during which time an appeal may be taken to the county superintendent, in which case the county superintendent shall investigate the case and make a final decision within five days."

Within five days after appellee entered of record the cancellation of relator's contract he gave appellee written notice of appeal and requested appellee to prepare and certify to the county superintendent a transcript of the proceedings before the appellee. No appeal bond was filed or tendered to appellee within ten days after the entry of the order of cancellation; but one was tendered within thirty days thereafter. The appellee insists that the statutory provisions respecting appeals from a justice of the peace apply to an appeal under the Teacher Tenure Act from a township trustee to the county superintendent and, consequently, that it was necessary for appellant to file an appeal bond. It is true, as pointed out by appellee, that under §6790, Burns Ann. Ind. St. 1926 (Acts 1865, ch. 1, p. 36, §164) appeals from decisions of township trustees are governed by the rules "which govern appeals from justices of the peace to circuit court, so far as such rules are applicable." But we do not think that the statutory requirements respecting appeal bonds in appeals from decisions of justices of the peace are applicable to the appeals authorized in §2 of the Tenure Act. The appeal contemplated in the Tenure Act is informal and involves very little expense. The superintendent is

merely to "investigate the case" and give his decision without any hearing or the filing of any briefs by interested parties. The so-called appeal amounts to little more than a review of the acts of the township trustee by his superior administrative officer and in our opinion the relator performed his sole duty in respect to the appeal when he gave notice to the appellee and requested that copies of the papers on file and a transcript of the proceedings and of the evidence introduced at the hearing be transmitted to the county superintendent.

On the basis of the stipulated facts the trial court erred in making a general finding in favor of the defendant and in rendering judgment thereon. The judgment is reversed and the cause remanded with instructions to the trial court to make a general finding in favor of the plaintiff and to enter judgment of mandate against the defendant trustee requiring him to perform the acts necessary to perfect plaintiff's appeal to the county superintendent.