## ANDREWS et al. v. CLAIBORNE PARISH SCHOOL BOARD.

No. 5794.

Court of Appeal of Louisiana.
Second Circuit.

March 31, 1939.

Rehearing Denied April 28, 1939.

Writ of Certiorari and Review Denied
May 29, 1939.

T. Kinnebrew, of Homer, and Lee & Lee, of Shreveport, for appellant.

Meadors & Gensler, of Homer, for appellee.

TALIAFERRO, Judge.

Plaintiff was employed by the School Board of Claiborne Parish to teach in the Homer Grammar School therein for the 1936–7 term of nine months at a salary of $74 per month. When the contract of employment was executed she was single. She married on December 30, 1936. On January 1, following, the Parish Superintendent wrote her a letter of dismissal, of which the following is a copy:

"Dear Mrs. Andrews:

"It is the established policy of the Claiborne Parish School Board that a lady teacher's contract be terminated when she marries. I take this means, as secretary of the Board, to remind you of this fact and that we will have a teacher at the Homer Grammar School Monday, January 4th, to assume your duties."     .

She reported for duty the morning of January 4th, and was then advised by the principal that the superintendent had authorized him to say to her that her services were no longer needed. She instituted this suit in November, 1937, to recover $370, the salary due her for the five months she was denied to teach. It is alleged that she was willing, ready and able to teach said five months, as she had done during the prior four months, and that she was discharged without just cause.

So far as needful to the issues, we quote from defendant's answer, viz:

"It is admitted that petitioner first named entered upon her duties under the contract, which is annexed to her petition, and did teach until the Christmas Holidays of 1936.

"Further answering said Article, respondent shows that the contract itself provides 'that it may be terminated at any time by it (respondent) should it appear that you are incompetent, inefficient or un-

worthy of the endorsement given you, *or for other just and sufficient cause;*'

"That at the time said contract was entered into and long prior thereto, to the knowledge of petitioner, the Claiborne Parish School Board, Respondent herein, had a fixed rule which prohibited the employment of teachers who were married, and provided for the dismissal of any teacher who married during her contractual period, as will appear from an extract of the minutes of said School Board of date March 1st, 1933, annexed hereto and made a part hereof.

"That as aforesaid stated, this rule was known to plaintiff first named when she entered into said contract, which is annexed to her petition, and was entered into with reference thereto, and that with full knowledge thereof she did on or before January 4th, 1937, enter into a marriage contract with her present husband, viz; Lloyd Andrews.

"That immediately thereafter she was notified by letter, signed by the Superintendent of Public Education for Claiborne Parish that in view of said marriage her services would no longer be required, and that following the writing of said letter, the Claiborne Parish School Board, respondent herein, at its first meeting, formally ratified the action of the Superintendent in connection therewith, all of which will be shown from letter written and the resolution of the Claiborne Parish School Board adopted, subject thereto in connection therewith, copies of which are annexed hereto and made part hereof, and in this connection, respondent avers that it had just and sufficient cause for dispensing with the services of the said plaintiff first named, when she contracted marriage, as aforesaid; and in view of the rule relative thereto prevailing when the contract with said plaintiff was entered into as above set out, respondent shows that said plaintiff breached said contract, and that plaintiffs are now estopped to deny that said marriage was a just and sufficient cause for her dismissal."

Thereafter, defendant filed a plea of estoppel, based upon the following allegations of fact: That when plaintiff executed the contract of employment declared upon by her, she did so with full knowledge of defendant's policy, based upon formal resolutions, adopted long prior thereto, to the effect that no married woman would be employed by it as a teacher in a public

school of Claiborne Parish, and that if a single lady teacher married while teaching her services would be immediately dispensed with; that when she was first employed by defendant in the year 1934, she succeeded a lady teacher who had been discharged because she married, of which fact plaintiff was aware; that prior to her said marriage, plaintiff consulted with the principal of the Homer High School, in which she was teaching, told him of her contemplated marriage, and was by him advised to delay doing so until the expiration of the existing contract; that she thereafter consulted various members of the School Board in an effort to have the board waive its policy in her case; that notwithstanding the refusal of her request by said members, and notwithstanding said principal's advice, and with full knowledge of the policy of defendant relative to married teachers, she contracted marriage.

There was judgment in plaintiff's favor for the amount sued for, and defendant appealed.

■ Plaintiff was teaching her third scholastic term in Claiborne Parish when relieved of her position. Under the provisions of Act 58 of 1936, amending Section 48 of Act 100 of 1922, her status was that of a probationary teacher. She could only be discharged by the School Board *"upon the written recommendation, accompanied by the valid reasons therefor, of the superintendent of schools of that parish."*

Prior to plaintiff's first employment as a teacher, by defendant, it had formally adopted a policy whereby married women teachers would be eliminated from the schools. Those who were then teaching were not discharged, because of long and satisfactory service, but when a married teacher died or quit teaching, she would be replaced by an unmarried one, and the same course was generally followed when a single teacher married. It does not affirmatively appear that such action was taken during the scholastic term, except in plaintiff's case. Plaintiff well knew of the board's policy in these respects. Notwithstanding this knowledge, it is argued on her behalf that her marriage did not in legal contemplation amount to "valid reason" for the discharge; and, conceding arguendo that this position is not correct, it is further argued that she was not legally discharged,—that the mandatory provisions of Act 58 of 1936 were not complied with. We have reached the conclusion that this latter position is well founded, and shall pitch a decision upon it.

The School Board was in session January 4th, the day plaintiff was refused the right to resume her teaching duties, following the Christmas holidays, and the record shows it took the following action on her case:

"The Superintendent called to the attention of the Board the fact that Miss Virginia Dawson was married during the Christmas holidays. He read to the Board a copy of his letter to Miss Dawson in which he stated the policy of the Board in the past as shown by the minutes had been to terminate a lady teacher's contract on the day that she married. He further stated that it was his understanding that Miss Dawson intended to bring suit to collect her salary for the balance of the school year, should the Board maintain their policy of discharging a lady teacher when she married. He asked that the Board indicate what policy they wished to pursue in this case.

"After discussion, motions were made by C. E. Miller, seconded by Prentis Bailey and unanimously carried that the Board assume the same policy with reference to Miss Dawson's case as they had with other like cases since the passage of the resolution terminating a lady teacher's contract when she marries."

It will be observed from this excerpt from the Board's proceedings, that the superintendent preferred no charge against plaintiff other than that she had violated a policy of the Board, and made no *written recommendation* to the Board in her case. The Board, it is manifest, did not go on record as discharging her, but simply acquiesced in the superintendent's action in doing so, and reaffirmed its previously adopted policy towards women married teachers and those who married after being employed. Defendant contends that the superintendent's action was done in the capacity of agent and that his action has been made effective by its ratification.

■ The power to employ and discharge teachers has been confided by the Legislature solely to the School Boards of the several parishes of the state. Act No. 100 of 1922; Act No. 58 of 1936. The right to exercise this power may not be dele-

gated. Lanier v. Catahoula Parish School Board, La.App., 154 So. 469.

Therefore, the action of the superintendent in discharging plaintiff was wholly beyond the scope of his authority. It was of such character that ratification by the board, even if its action be construed as such, could not be productive of the same results which would surely follow positive action on its part. It would appear axiomatic that when the exercise of a power lodged in a political corporation by the creating authority is made so strictly personal as not to be delegable, the exercise thereof by any other person may not be made the subject of ratification or confirmation by such corporation. The converse, of course, is equally true. The test is: if a power is not delegable, its exercise by another may not be accorded legal vitality through ratification.

The only method provided by law for the discharge of a teacher of plaintiff's status is that laid down in the 1936 act, to-wit: For the superintendent to recommend in writing to the board his or her dismissal, with supporting valid reason or reasons for his action, and the board's positive favorable action on the recommendation. Neither step was taken in this case. It is rudimentary that to abrogate a contract executed pursuant to statute, the requirements of the statute, justifying the abrogation, must be strictly conformed to.

Concerning the nature, status and powers of School Boards, Marr's Political Corporations, § 562, page 748, has this to say: "Parish School Boards are public corporations, whose functions are exclusively of a public character, performed solely for public benefit; they are mere *State agencies for the administration of the system of public education, with only such powers and authority as are delegated to them, and their acts are purely administrative;* but in addition to the powers expressly granted, they have such further powers as are necessarily and properly incident to the performance of their statutory duties." (Italicizing ours).

Being a state agency, a school board is without discretion to vary from the method directed by law for the performance of a ministerial duty. Acts done in contravention of a prohibitory law are null and void. Revised Civil Code, article 12.

Pertinent to the lack of power to ratify acts not legally delegable, American Jurisprudence, Vol. 2, § 218, page 174, lays down the rule thus, "Acts which cannot be legally delegated to an agent to perform, such as acts to be done in violation of law, or which would contravene public policy and which would amount to crimes against the state, cannot be ratified."

This statement of the principle finds support in 2 Corpus Juris Secundum, Agency, § 36, page 1072; 7 R.C.L., § 664, p. 663; 21 R.C.L., § 104, p. 925; Restatement of the Law of Agency, § 84, p. 199.

The principle is tersely given in Anderson v. Pike, Tutrix, 29 La.Ann. 120, as follows: "No act reprobated by law, can be made valid by anybody's ratification."

For the reasons herein assigned, the judgment appealed from is affirmed with costs.