**BLUE RIVER VALLEY SCHOOL COR-PORATION, Defendant-Appellant,**

v.

**Carol A. RENFRO, Plaintiff-Appellee.**

No. 1–982A266.

Court of Appeals of Indiana, First District.

April 5, 1983.

Selwyn even helped Edgar raise the funds to

Alan E. Yergin, Gregory L. Crider, Yergin & Yergin, New Castle, for defendant-appellant.

R. Clark Allen, New Castle, Richard J. Darko, Bayh, Tabbert & Capehart, Indianapolis, for plaintiff-appellee.

David J. Emmert, Indianapolis, for amicus curiae, Indiana School Boards Ass'n.

NEAL, Judge.

## STATEMENT OF THE CASE

Defendant-appellant Blue River Valley School Corporation (Blue River) appeals an adverse partial summary judgment granted by the Henry Circuit Court in favor of plaintiff-appellee Carol A. Renfro (Renfro) in her suit on a teacher's indefinite contract.

We affirm.

## STATEMENT OF THE FACTS

The facts upon which the summary judgment was based are undisputed. Renfro was a tenured elementary school teacher for Blue River with eleven years experience. On April 6, 1979, Blue River commenced proceedings by notice to cancel her indefinite contract for incompetency and other good and just cause, but for some undisclosed procedural errors, Blue River abandoned the action. Blue River next re-commenced the cancellation proceedings by certified letter dated May 22, 1979, again advising Renfro of its intent to recommend cancellation of her contract. Following the cover the shortage in the client's account.

requisite procedures, a hearing was held on June 12 and 13, 1979, and on June 26, 1979, the Blue River School Board cancelled by resolution Renfro's indefinite contract "immediately." Renfro received notice by mail of their action on June 29, 1979. Renfro filed her suit on May 20, 1980, alleging that Blue River had impermissibly cancelled the contract on June 26, and had refused to compensate her for the 1979–80 school term. During 1979, school was concluded on May 25, 1979.

### ISSUE

The sole issue on appeal is the construction of Ind.Code 20–6.1–4–10, the provision for cancellation of indefinite contracts.

### DISCUSSION AND DECISION

Renfro was a permanent teacher under an indefinite contract pursuant to Ind.Code 20–6.1–4–9, which could only be cancelled for cause. Ind.Code 20–6.1–4–10,[1] provides the grounds and the time of cancellation as follows:

"Cancellation of Indefinite Contract by School Corporation—Grounds. (a) An indefinite contract with a permanent teacher may be canceled in the manner specified in section 11 [20–6.1–4–11] of this chapter for only the following grounds:

(1) immorality;

(2) insubordination, which means a wilful refusal to obey the state school laws or reasonable rules prescribed for the government of the school corporation;

(3) neglect of duty;

(4) incompetency;

(5) justifiable decrease in the number of teaching positions; or

(6) other good and just cause.

When the cause of cancellation is ground (1) or (2), the cancellation is effective immediately. When the cause of cancel-

lation is ground (3), (4), (5), or (6), the cancellation is effective at the end of the school term following the cancellation.

(b) An indefinite contract may not be canceled for political or personal reasons."

The trial court found that Renfro had been dismissed for incompetence under subsection (a)(4) and other good and just cause under subsection (a)(6) of the above-cited statute. The trial court found in his conclusions of law that the phrase "school term" was intended to mean the traditional period of instruction commencing in the early fall and concluding in late spring, a period of at least nine months in length as defined by Ind.Code 20–10.1–2–2. The court further found that the cancellation of Renfro's indefinite contract became effective May 30, 1980, that being the end of the school term following the date of cancellation.

Various references to the phrase "school term" and "school year" exist in the public school statutes. Ind.Code 20–10.1–2–2 recites that the minimum length of a "school term" is nine months. Ind.Code 20–6.1–4–3 states that each contract between a teacher and a school corporation must contain (a) the beginning date of the *school term* as determined annually by the school corporation, (b) the number of days in the *school term* as determined annually by the school corporation, (c) the total salary to be paid during the *school year*, and (d) the number of salary payments to be made during the *school year*. Ind.Code 20–6.1–4–13 provides that a permanent teacher may not cancel his indefinite contract during the *school term* of the contract for thirty days before the *beginning date of the school term*. Ind. Code 20–6.1–4–14 contains the provision that the contract of a non-permanent teacher continues in force "for the next *school term* following the date of termination set in the contract. However, the contract does not continue if: (1) on or before May

---

1. The subject matter of Ind.Code 20–6.1–4–10 was formerly covered by Ind.Code 20–6–12–2 which was repealed with the rest of Article 6 by Acts 1976, P.L. 100, § 4. The relevant language of Ind.Codes 20–6.1–4–10 and 20–6–12–2 is substantially the same.

1, the school corporation notifies the teacher that the contract will not continue for the next *school term.*" (Emphasis added.) Ind.Code 20–6.1–4–17 empowers the school corporation to contract with a principal or any of his administrative assistants for compensation for services performed *either before or after the school term.* Ind.Code 20–6.1–5–1 fixes teachers' minimum salary quoted on a *nine months school term.* Ind. Code 20–6.1–5–2 provides for adjustments in a teacher's salary if the *school term* of the contract is more or less than nine months. Finally, Ind.Code 20–10.1–2–1 defines a school year as "the period of time beginning after June 30 of each year and ending before July 1 of the following year, except when a different period is specified for a particular purpose."

Blue River predicates its argument on the assumption that Ind.Code 20–6.1–4–10 is ambiguous, and therefore, rules of statutory construction are applicable. It urges that statutes affecting the public should be liberally interpreted while those referring to an individual should receive a strict construction. It cites teacher tenure cases which state, in effect, that in construing statutes where two or more constructions may be adopted, it is the duty of the court to adopt the construction best calculated to protect the public right as against the individual right. Further, that the statute should be construed in the most beneficial way the language will permit to prevent absurdity, hardship, or injustice. *Lost Creek School Township, Vigo County v. York,* (1939) 215 Ind. 636, 21 N.E.2d 58; *Miller v. Barton School Township of Gibson County,* (1939) 215 Ind. 510, 20 N.E.2d 967; *State ex rel Clark v. Stout, Trustee,* (1933) 206 Ind. 58, 187 N.E. 267; *Gary Teachers, Union Local No. 4 et al v. School City of Gary,* (1975) 165 Ind.App. 314, 332 N.E.2d 256.

Blue River then asserts that Ind.Code 20–6.1–4–10 should be construed so that the language "end of the school term following the cancellation" applies only when cancellation occurs during the progress of the school term, and has no application when the cancellation occurs during the summer between terms. Alternately, it argues that "school term" should be construed as synonomous with "school year," or in this instance, July 1 to June 30. It contends that the purpose of the language is to permit the teacher to finish the school term after cancellation and have the summer months to find new employment in the fall, and this purpose is fulfilled when the discharge is in the summer months between terms. Blue River finally argues that the construction adopted by the trial court creates a hardship on the school corporation, and amounts to an unexpected windfall for the teacher.

Rules of construction are not to be resorted to unless ambiguity exists. *Ott v. Johnson,* (1974) 262 Ind. 548, 319 N.E.2d 622; *Town of Merrillville v. Lincoln Utilities, Inc.,* (1976) 171 Ind.App. 224, 355 N.E.2d 851. Our purpose is to seek the intent of the legislature. *Indiana State Board of Tax Commissioners v. Holthouse Realty Corporation,* (1976) 170 Ind.App. 232, 352 N.E.2d 535. We view the clear purpose of Ind.Code 20–6.1–4–10 to be a restriction upon the power of the school corporation to cancel a permanent teacher's indefinite contract. In such cancellation all of the requirements of the statute must be strictly adhered to. *Joyce v. Hanover Community School Corp.* (1971) 150 Ind.App. 296, 276 N.E.2d 549; and *See* Ind.Code 20–6.1–4–12. The phrase "school term" is defined and used so numerously in the school statutes, including the contract statutes under scrutiny here, that its meaning is clear. As stated by the trial court, "school term" means the traditional period of instruction commencing in the early fall and concluding in late spring, a period of at least nine months in length as defined by Ind.Code 20–10.1–2–2. No ambiguity exists. Ind.Code 20–6.1–4–3, which sets forth contract requirements, distinguishes "school term" and "school year" in the same section. Ind.Codes 20–10.1–2–1 and 2 define "school year" and "school term" in succeeding sections. The

legislature has demonstrated its cognizance of the two phrases, "school term" and "school year", and has used them differentially; if it had wanted to use "school year" in Ind.Code 20–6.1–4–10 it would have done so.

*Spice Valley School Township of Lawrence County v. Rizer,* (1938) 214 Ind. 528, 15 N.E.2d 390, is a case interpreting the predecessor to Ind.Code 20–6.1–4–10. The former statute [2] was identical in content, and reads, in part, as follows:

"That when the cause of cancellation of an indefinite contract is not immorality or insubordination, as defined in the act, such cancellation shall go into effect at the end of the school term following such cancellation."

The court in *Spice Valley* held that a cancellation proceeding, or an attempted cancellation proceeding instituted in the summer of 1931, after the conclusion of the school term, was not relevant, or a defense to a suit on an indefinite contract for compensation filed by a permanent teacher where the grounds for discharge were not immorality or insubordination. In the case at bar, Ind.Code 20–6.1–4–10 is, as conceded by Blue River, a substantial reenactment of that earlier statute. It is a rule of construction that where a statute has been judicially construed by a court of last resort, and the statute is reenacted in substantially the same terms, the legislature is deemed to have intended that the same construction be placed on it. *State v. Dively,* (1982) Ind.App., 431 N.E.2d 540. We believe that *Spice Valley,* as well as the plain meaning of the statute, is determinative. Blue River attempts to distinguish *Spice Valley* in arguing that the proceedings to cancel the indefinite contract were commenced with notice being given after the close of the school term. Our reading discloses that the case did not turn on that point. The statute used the term "at the end of the school term following such cancellation," and the court in *Spice Valley* only mentioned the date of initiation parenthetically.

Ind.Code 20–6.1–4–11(7)(A) provides that the contract may not be cancelled until the date set for the hearing. No cancellation occurred before June 26, 1979 in the instant case. We are of the opinion that the cancellation date was determinative. In light of the legislature's reenactment of the statute under Ind.Code 20–6.1–4–10, and the *Spice Valley* interpretation of the earlier statute, we conclude that the legislature intended that result.

Blue River's policy arguments that the construction placed upon the statute by the trial court creates a hardship on the school corporation is unpersuasive. Any hardship was created by Blue River's last minute attempt to cancel Renfro's contract, and in its not following the law. Renfro had taught in the school system for eleven years. We are not told why her incompetence remained concealed from vigilant supervisory personnel all that time, only to emerge in April, 1979. After commencement, the proceedings were inexplicably abandoned and recommended by notice only three days before the school term ended. Even the School Board's resolution cancelling Renfro's contract spoke in terms of "effective immediately," not in terms of the conclusion of the school term, or even the school year, as argued here. In short, Blue River failed to follow the statute. We see no value in moving the deadline from the last day of school, usually in May, to June 30. We are of the opinion that the statute was enacted for the protection of the teacher as well as the public, and the legislature obligated the School Corporation to proceed with any cancellation proceeding at an early date to produce an element of stability in the teacher's life as well as the general welfare of the public and school corpora-

---

**2.** The statute was called The Tenure Act of 1927 (Acts of 1927, ch. 97, § 2, p. 259, § 28— 4308 Burns' Ann.St.1933.)

tion. The statute appears to be designed so that by the last day of school, a teacher would know whether he had a job or not, and the school would know whether it had a teacher or not. If not, they both had all summer to seek other employment or replacement, as the case may be. This policy is also reflected in Ind.Code 20–6.1–4–14, which requires notice of termination to non-tenure teachers by May 1. The reverse is true of course for the school corporation acquiring a new teacher.

For the above reasons this cause is affirmed.

Judgment affirmed.

ROBERTSON, P.J., concurs.

YOUNG, P.J. (participating by designation), concurs.