Robert F. MYERS, Plaintiff-Appellant,

v.

GREATER CLARK COUNTY SCHOOL CORPORATION; Board of School Trustees of the Greater Clark County School Corporation; Michael Colston, member; John Ferguson, member; Robert Fields, member; Leslie Kavanaugh, member; Donald Gibson, member; Nancy Kraft, member; and Carl Bunnell, member; Boyd Carter, Superintendent; Charles Rubright, as agent for the Greater Clark County School Corporation and Boyd Carter, as Superintendent; Carl Bunnell, individually; Donald Gibson, individually; Leslie Kavanaugh, individually; and Nancy Kraft, individually, Defendants-Appellees.

No. 1-983A290.

Court of Appeals of Indiana, First District.

June 18, 1984.

Rehearing Denied July 30, 1984.

Robert W. Lanum, Charles R. Murphy, Fifer, Vogt & Lanum, Jeffersonville, for plaintiff-appellant.

David R. Day, Bose McKinney & Evans, Indianapolis, Kerry L. Thompson, Everitt, Houston & Thompson, Scottsburg, Jack Risinger, Greater Clark County School Corporation, Jeffersonville, for defendants-appellees.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Appellant, Robert F. Myers (Myers) was a permanent teacher formerly employed by the Greater Clark County School Corporation (Greater Clark) as an Assistant Superintendent for Auxiliary Services. Myers challenges the Scott Circuit Court's decision to uphold the Board of School Trustees of the Greater Clark County School Corporation's (School Board) cancellation of his contract on the grounds of immorality and other good and just cause.

We reverse.

## STATEMENT OF THE FACTS

Myers was a permanent teacher with tenure who had been employed by the Greater Clark County School Corporation for the past 30 years as either a teacher or, more recently, an Assistant Superintendent of Auxiliary Services. Since he had obtained permanent teacher status, Myers was employed not only under an indefinite contract but also under an individual written contract having a three-year term ending on June 30, 1983.

By the summer of 1981, however, it was evident that there was growing dissatisfaction over Mr. Myers' presence and, to a lesser extent, his job performance in the school system. The School Board had re-

ceived several complaints about Myers' behavior in the past. One school board member, Carl Bunnell, was particularly disenchanted with Myers, because he suspected him of conducting an affair with his wife, alleged activity which contributed to the eventual breakup of the Bunnell marriage. Bunnell's strong feelings about the termination of Myers' contract were conveyed to other board members as well as to Superintendent Boyd Carter.

On July 13, 1981, Superintendent Carter and Jack Risinger an attorney who served as Greater Clark's general counsel and business manager, met with Charles R. Rubright, an Indianapolis attorney who represented the school corporation in employee relation matters. The purpose of the meeting was to discuss the procedure for terminating Myers' contract. During this meeting, Carter and Rubright also discussed Carter's role in the termination proceedings. Due to a close working relationship between Carter and Myers which had spanned eight years, "Carter explained that he was reluctant to make a recommendation to the School Board regarding Myers' contract". Finding of Fact, No. 12. IND.CODE 20–6.1–4–11, which outlines the procedures for cancellation of an indefinite contract by a school corporation, states in part that a contract may not be cancelled until "the superintendent has given his recommendation on the contract". IND. CODE 20–6.1–4–11(a)(7)(C). Therefore, Carter and Rubright "informally agreed" that Rubright would act on the former's behalf to make any recommendation required of the superintendent. Finding of Fact, No. 12.

Rubright then explained the termination procedure to the School Board at an executive session meeting the next day, July 14th. During the executive session, it was the consensus of the School Board that an investigation of Myers was appropriate; further, Rubright was appointed to conduct the investigation for the administration and to act as prosecutor for the school corporation during the hearing. Upon Rubright's advice, Bunnell disqualified himself from any subsequent proceedings concerning Myers' termination. Bunnell did, however, aid the progress of the investigation by contacting witnesses to testify against Myers, specifically, Phyllis Gentry and Jesse Dobson. Also during this July 14th meeting, the School Board and the superintendent delegated to Mr. Rubright the authority to *independently* make the superintendent's recommendation to the School Board. School Board's Finding of Fact No. 3 (our emphasis). The Board apparently considered this delegation an offshoot of Rubright's status as independent investigator and prosecutor. The trial court specifically found that at no time was Rubright designated an agent for Carter by the Trustees. Finding of Fact No. 17.

Rubright conducted his investigation, and at a July 28th executive session, he informed the School Board that he had amassed evidence that the Board should hear. Subsequently, the Board set a time for consideration of the cancellation of Myers' contract and instructed Carter to inform Myers of the date. Myers, in response, requested the reasons for the action: the school corporation cited immorality and good and just cause; more specifically, Myers' sexual harassment of two female employees of the school corporation. Myers requested a hearing, as is his right under IND.CODE 20–6.1–4–11(a)(3), and the hearing was set for August 25, 1981.

Jesse Dobson, a cafeteria worker, and Phyllis Gentry, a school bus driver, testified at the hearing as to incidents involving Myers during his employment at Greater Clark. Both women were under Myers' supervision in his capacity as Assistant Superintendent of Auxiliary Services.

Mrs. Dobson related several incidents which occurred during the 1975–76 school year, including Myers' repeated visits to her workplace, an offer of lunch, an invitation to a Christmas party, and other acts of unsolicited special attention. Further, Mrs. Dobson testified that one morning Myers entered the cafeteria when she was alone, approached her, stood very close to her and then put his hands upon her face. At that

moment, the other cafeteria workers arrived, and Mrs. Dobson pushed his hands away. This incident was reported to the superintendent and the problem was settled.

Mrs. Gentry testified that during the 1979 school year she was having trouble disciplining the children on her school bus route, and Myers offered to ride on the bus to observe the students and attempt to assist her. He repeatedly requested to ride with her thereafter, even though the discipline problem was alleviated. Mrs. Gentry stated that on one occasion Myers leaned over her as she was looking at her schedule and allowed his hand to touch her breast. This incident was never reported. Mrs. Gentry initially refused to testify against Mr. Myers; she later changed her mind once Bunnell agreed to talk to the School Board about reinstating a friend of hers as an employee of Greater Clark.

At the close of the hearing, Rubright stated that "my recommendation as the superintendent's recommendation would be that the contract of Mr. Myers be cancelled". We will discuss Rubright's statements as well as the ensuing discussion between Rubright and Myers' counsel regarding Rubright's authority to make such a recommendation in far greater detail in the body of this opinion. At no time, however, did Superintendent Carter give his recommendation on the cancellation of Myers' contract. Finding of Fact, No. 31.

On September 1, 1981, the School Board met in a public meeting and voted to cancel Myers' contract, 4–2. The grounds for cancellation were immorality and other good and just cause.

## ISSUES

On appeal from the trial court's affirmance of the School Board's decision to terminate his contract, Myers raises four issues, which we have restated:

I. Whether the trial court erred by concluding as a matter of law that
   A. a recommendation of the superintendent is not a prerequisite to the cancellation of an indefinite teacher's contract under IND.CODE 20–6.1–4–11; and
   B. to the extent such recommendation is required, it was fulfilled by Rubright's recommendation at the August 25th hearing.

II. Whether the trial court erred by concluding as a matter of law that Myers' contract was not cancelled for personal or political reasons and that certain members of the school board were not precluded from hearing the case because of personal prejudice or bias against Myers.

III. Whether Rubright's multiplicity of roles violated Myers' due process rights.

IV. Whether the trial court erred in excluding certain testimony of John Boyd.

Inasmuch as we reverse the trial court's decision on the basis of Issue I, we will not discuss the latter three issues.

## DISCUSSION AND DECISION

*Issue I: Superintendent's Recommendation*

The relevant statutory language which is the subject of the discussion states:

"*20–6.1–4–11 Cancellation of an indefinite contract by school corporation; procedures*

(a) an indefinite contract may be cancelled *only* in the following manner:

\* \* \* \* \* \*

(7) *a contract may not be canceled until:*

\* \* \* \* \* \*

(C) *the superintendent has given his recommendations on the contract;* on five (5) days' written notice to him by the school corporation, the superintendent shall present his recommendation on each contract, except on a superintendent's contract;"

(Emphasis added).

The underlined language is explicit. It requires no interpretation or statuto-

ry construction to conclude that the contract can be cancelled *only* in the above manner: the contract "may not be canceled until ... *the superintendent has given his recommendation*". The fundamental rule of statutory construction is that one must divine the intention of the legislature; further, words and phrases will be taken in their plain, ordinary, and usual sense and meaning unless a different purpose is manifested by the statute itself. 26 I.L.E. *Statutes* Sec. 117. No part of a statute will be held meaningless if it can be avoided. 26 I.L.E. *Statutes* Sec. 122. The above statute employs the word "shall", which normally means mandatory. *Sharton v. Slack*, (1982) Ind.App., 433 N.E.2d 856. Thus, it would appear that subsection (7)(C) creates a precondition and is mandatory.

■ The School Board, however, asserts the language is nonmandatory and supports this conclusion in part with the case of *Joyce v. Hanover Community School Corp.* (1971) 150 Ind.App. 296, 276 N.E.2d 549. In *Joyce*, the school board tendered tenure teachers' contracts with an ultimatum that they be signed by a certain date; if not, the teachers' services would be terminated. *Joyce, supra*, at 299, 276 N.E.2d 549. There was no effort on the part of the school board to comply with the statute governing termination, and the *Joyce* decision turned on whether the failure to sign by the certain date amounted to a resignation. The court, in the course of its decision, listed six mandatory steps requisite to cancellation of a tenure teachers' contract, none of which were followed by the Hanover Community School Corporation. Since the school board had not complied with the removal statute, the court determined that the teachers be reinstated.

The Greater Clark School Board argues that since recommendation by the superintendent is not included as one of *Joyce's* "mandatory steps", the simple deduction

follows that the recommendation is not mandatory. It is our opinion, however, that the general statements contained in *Joyce* are dicta, and the failure of the court to specifically mention the superintendent's role does not have the necessary effect of rendering the superintendent's duty merely advisory. At any rate, the fifth *Joyce* prerequisite states that a board may cancel an indefinite contract "after the school board has complied with the provisions of Burns Sec. 28–4512", *Joyce, supra*, at 312, 276 N.E.2d 549, which section described the superintendent's duty. To the extent, then, that the *Joyce* decision implies that the superintendent's role is advisory, it is overruled.

The Greater Clark School Board next analogizes the instant case to *State ex rel. Clark v. Stout*, (1933) 206 Ind. 58, 187 N.E. 267, a case which construes similar language in another section of the Teacher's Tenure Act as purely advisory.

*Clark* involved the cancellation of a teacher's tenure contract. A teacher becomes a permanent teacher when he or she has served under contract in any Indiana school corporation for five or more successive years. IND.CODE 20–6–12–1. However, IND.CODE 20–6–12–3 [1] provides in part:

"No teacher shall be appointed by any such school corporation in Indiana, and no teacher shall become a permanent teacher in any such school corporation, until the school superintendent shall have made a report upon such teacher's preparation, experience and license, and it shall be the duty of every such superintendent with ten (10) days after request, to make such report upon any person whom the school corporation is considering as an applicant; ..."

In *Clark*, the school board argued that appellant was not a permanent teacher since the superintendent had not in fact ever made such a recommendation, al-

---

**1.** The present version of this statute is IND. CODE 20–6.1–4–1 which states in part "within ten (10) days after a request from the governing body, the superintendent shall make a report on

any person being considered by the school corporation for either a teaching appointment or an indefinite contract as defined in section 9 of this chapter".

though appellant had completely satisfied the requirements to be a permanent teacher and did indeed claim that status. *Clark, supra,* at 62, 187 N.E. 267.

The *Clark* court concluded that the superintendent's role as mandated by IND. CODE 20–6–12–3 was intended to be advisory only. *Id.* at 63, 187 N.E. 267. The court declined to reach the undesirable result of penalizing a teacher who acted in good faith simply because of the failure of the employing official. The *Clark* court stated:

"We grant that appellee's construction of Sec. 3 would be quite plausible if we could accept his preliminary assumption that the duty of requesting and obtaining a report upon his own preparation, experience and license rests upon the prospective teacher. In that case the failure of an applicant to obtain a valid contract or of a teacher to become a permanent teacher would have to be charged to the applicant or teacher and injustice of result would not be a factor in construing Sec. 3. *Further if it were the intent of Sec. 3 to provide that no person could become a permanent teacher unless such person or teacher should first request and receive the report in question we surely should be compelled to hold that such action by the person interested would be a condition precedent to his being legally appointed as a teacher or to his becoming a permanent teacher, even though such a result would qualify the unconditional provisions of Sec. 1.* In reaching the conclusion that Sec. 3 places upon the applicant the duty of requesting the report appellee relies not so much upon the wording of the section as upon the rule of construction that "in dealing with legislation granting powers and privileges to individuals for their own advantage, courts are required to strictly construe as against such individuals.' Such a rule has been recognized by this court. *Board v. Davis* (1894), 136 Ind. 503, 36 N.E. 141. But in our opinion the Teacher Tenure Act is based upon the public policy of protecting the educational interests of the state

and not upon a policy of granting special privileges to teachers as a class or as individuals. Consequently it should not be strictly construed as against relator but rather should be construed liberally to effect the general purpose of the Tenure Act since it is "legislation in which the public at large is interested."

*Id.* at 64, 187 N.E. 267 (our emphasis). *Accord, Whitlatch v. School Town of Milan,* (1935) 209 Ind. 75, 198 N.E. 85; *Kostanzer v. State ex rel. Ramsey,* (1933) 205 Ind. 536, 187 N.E. 337.

It is to be noted that *Clark* emphasizes the equitable considerations: the school corporation, the party responsible for the omission, would not be permitted to profit from it to the detriment of a good faith teacher. The underlined portion of the above quote clearly supports a mandatory construction in the present case, for it uses the word "unless" and suggests that a mandatory interpretation would result if the burden of obtaining the report was on the teacher.

We perceive the purpose of subsection (7)(C) is to make available to lay school board members the professional advice of an on-the-job superintendent who has personally observed the teacher who is the subject of the termination proceedings. School board members, who meet once a month, may or may not even know the teacher, much less be in a position to evaluate his performance. Therefore, the legislature requires the superintendent's input before a permanent teacher is discharged.

Further, courts have consistently held that the statutory procedures for cancellation of an indefinite contract must be strictly construed and followed since the effect is to take away the vested rights of a teacher. *The School City of Brazil v. Rupp,* (1937) 104 Ind.App. 287, 10 N.E.2d 924; *Blue River Valley School Corp. v. Renfro,* (1983) Ind.App., 446 N.E.2d 1364. We are not convinced that any statutory construction permits the conclusion that all of the provisions relating to termination of

an indefinite teachers' contract are mandatory except subsection (7)(C).

The result reached here is supported by decisions from foreign jurisdictions. *Booker v. Richland Parish School Board,* (1981) La.App. 393 So.2d 785; *Heath v. Alabama State Tenure Commission,* (1981) Ala.Civ.App., 401 So.2d 68; *Palone v. Jefferson Parish School Board,* (1975) La., 306 So.2d 679; *Serignet v. Livingston Parish School Board,* (1975) La.App., 282 So.2d 761. The reasoning common to all of these decisions is exemplified by *Heath v. Alabama State Tenure Comm'n., supra,* which explains that the primary purpose of the requirement that a school board may suspend or dismiss an employee upon the written recommendation of the superintendent is "to ensure that the city board of education and its superintendent act in concert in deciding whether to cancel a teacher's contract". *Heath, supra,* at 71. The superintendent represents the point of view of professional educators, while the board represents the view of the community and those charged with the management of the educational affairs of the school district. *Anderson v. Board of Education of the City of Yonkers,* (1976) (per curiam) 38 N.Y.2d 897, 382 N.Y.S.2d 750, 346 N.E.2d 551.

We further question the School Board's authority to delegate the superintendent's recommendation to Mr. Rubright, the prosecutor for the school corporation.

At the conclusion of the hearing before the School Board on August 25, the following dialogue ensued:

[Rubright recommends that contract be cancelled. *See* page 1326 of this opinion, *supra.*]

"MR. LANUM [Myers' attorney]: I would have to take Mr. Rubright to the point that you are making, is that you are acting instead of superintendent, Doctor Carter, in making recommendations as opposed to Doctor Carter making recommendations.

MR. RUBRIGHT: Yes, Mr. Lanum, the Board provided me that authority to make that investigation and make that recommendation through the superintendent as his designee, I am making that recommendation.

MR. LANUM: So Doctor Carter has nothing to do at this particular time about making a recommendation, only you as his agent.

MR. RUBRIGHT: I as his agent am making that recommendation.

MR. LANUM: Have you discussed this with Doctor Carter your recommendations?

MR. RUBRIGHT: I have not. Through that meeting total discretion was granted me.

MR. LANUM: By the School Board.

MR. RUBRIGHT: By the School Board and by Doctor Carter on July 14th meeting.

MR. LANUM: So at that time you were powered by the School Board to investigate and prosecute this particular action.

MR. RUBRIGHT: That is right, and make a recommendation."

■ School boards constitute an administrative body, *Indiana v. Board of School Trustees of the Metropolitan School District of Wabash County,* (1984) Ind.App., 460 N.E.2d 533, and are charged with the duty of administering the law governing public schools in their district. 68 Am. Jur.2d *Schools,* Sec. 50 (1973).

"It has generally been stated that it is the duty of school officers to administer the affairs of the corporation as directed by statute in the exercise of such powers and authority as are vested in them ... [s]uch officers have no powers other than those conferred by legislative act, either expressly or by necessary implication, and doubtful claims of power are resolved against them. They have special powers and cannot exceed them."

78 Am.Jur.2d, Sec. 50.

Under Indiana law, in carrying out the school purposes of each school corporation, its governing body[2] is given the specific

---

**2.** IND.CODE 20–5–1–3(b) states " 'governing body' shall mean the board of commission

power to "employ, contract for, and discharge" superintendents and teachers, among other employees. IND.CODE 20–5–2–2(7). This specific power to discharge employees is then exercised in the form of IND.CODE 20–6.1–4–11, as well as other statutory provisions, which provides the procedure for cancellation of an indefinite contract by a school corporation.

■ It is a firmly established rule that statutory boards, acting under statutes prescribing their duties and conferring upon them powers, must adopt and follow the method prescribed. *Silver, Burdett & Co. v. Indiana State Board of Education,* (1904) 35 Ind.App. 438, 72 N.E. 829.

In *Silver, Burdett, supra,* appellant, a schoolbook publisher, argued that the state board of education and the state board of school book commissioners had not properly adhered to a statute governing the revision of schoolbooks and in doing so had breched their contract with the publisher. The court, describing the two boards as "creatures of legislative enactment", discussed extensively the scope of their duties and powers. *Id.* at 454, 72 N.E. 829:

> "Statutory boards and officers must act within the scope of their authority and in obedience to the dictates of the statute under which they exercise authority, and when a statutory method is prescribed they leave no discretion to say when the statute may be strictly complied with, and when it may not be followed. Such boards and officers can only discharge the full measure of their duties by doing that which the statute commands, and doing it in the manner prescribed."

*Id.* at 458, 72 N.E. 829. *See Wrought Iron Bridge Co. v. Board, etc.,* (1898) 19 Ind. App. 672, 48 N.E. 1050. *Driftwood Valley Turnpike Co. v. Board, etc.,* (1880) 72 Ind. 226.

Other jurisdictions have adhered to the above statements of law. *In Hueman v. Independent School District No. 77,*

*Grand Meadow,* (1954) 243 Minn. 190, 67 N.W.2d 38, the Minnesota Supreme Court considered the issue of the power of a school board to delegate the function of accepting a teacher's resignation to a superintendent of schools. The relevant statutory authority decreed that "a contract may be terminated at any time by *mutual consent of the school board and the teacher".* *Hueman, supra,* 67 N.W.2d at 39, 40 (emphasis original). The appellee contended that the act of actually accepting the resignation was "merely a ministerial duty which the board could legally delegate because the discretionary act of determining that plaintiff's services were no longer desired had already been performed". *Id.* The *Hueman* court disagreed, admonishing the school district that:

> "The power to employ and discharge public school teachers is vested in the school boards by statute in this state, and we think it is in the best interest of the students, teachers, and schools that the orderly and settled statutory procedures for exercising such powers be spared any confusing inroads by allowing delegation of authority based on the fine judicial distinction between ministerial and discretionary duties."

*Id.*

In *Andrews v. Claiborne Parish School Board,* (1939) La.App., 189 So. 355, neither the school board nor the superintendent fulfilled their statutory obligations in regard to discharging a probationary teacher. Louisiana law required first, a superintendent's recommendation, complete with written reasons for the dismissal; and second, the school board's positive favorable action on the recommendation. *Andrews, supra,* at 358. Neither step was taken in this case: the superintendent made an oral recommendation at an executive session and then the school board did not go on record as discharging the teacher but "simply acquiesced in the superintendent's action in

charged by law with the responsibility of administering the affairs of a school corporation, including but not limited to, a board of school commissioners, metropolitan board of educa-

tion, board of school trustees or board of trustee; and 'member' shall mean a member of such governing body".

doing so". *Id.* at 357. The school board, in its defense, contended that the "superintendent's action was done in the capacity of agent and that his action had been made effective by its ratification". *Id.* Here, as in the *Hueman* case, the reviewing court vehemently disagreed with the school board's assertion:

"Therefore, the action of the superintendent in discharging plaintiff was wholly beyond the scope of his authority. It was of such character that ratification by the board, even if its action be construed as such, could not be productive of the same results which would surely follow positive action on its part. It would appear axiomatic that when the exercise of a power lodged in a political corporation by the creating authority is made so strictly personal as not to be delegable, the exercise thereof by any other person may not be made the subject of ratification or confirmation by such corporation. The converse, of course, is equally true. The test is: if a power is not delegable, its exercise by another may not be accorded legal vitality through ratification."

*Id.* at 358. *See also In the Matter of Cohoes City School District v. Cohoes Teachers Ass'n.,* (1976) 40 N.Y.2d 774, 390 N.Y.S.2d 53, 358 N.E.2d 878 (school board cannot surrender authority to make tenure decisions as part of collective bargaining agreement); *Herzig v. Board of Education of the Town of West Hartford,* (1964) 152 Conn. 144, 204 A.2d 827 (local board of education has no statutory authority to establish a lesser retirement age than that fixed by general statutes); *Martin v. Common School District No. 3, Ramsey County,* (1925), 163 Minn. 427, 204 N.W. 320 (only full board has authority to make contract under statutory law; when only a few members prepared a teacher's contract, contract was a nullity).

■ We are aware that the instant case is factually distinguishable from the above-cited decisions in that the present situation involves the School Board's delegation of the *superintendent's* authority to a third party, whereas in the cases above, the school board has simply delegated its *own* authority. It is our opinion, however, that the logic of the above-cited decisions most certainly extends to the present case. Actually, the instant situation poses potentially greater danger because the board delegated the authority to make the superintendent's recommendation to an out of town lawyer who had been appointed as an investigator and prosecutor for the school corporation. Generally speaking, the advice of the superintendent, "who may be presumed to possess more than ordinary skill and judgment touching the general competency and usefulness of teachers", may be necessary to prevent injustice and to insure the efficiency of the school corporation. *Duffey v. School Committee of Town of Hopkinton,* (1920) 236 Mass. 5, 127 N.E. 540.

We are constrained to consider one further issue. The School Board contends that Myers waived any objection to the substitution of Rubright's recommendation for that of Superintendent Carter. Appellee asserts further that the trial court specifically found that Myers had waived the issue in its conclusions of law.

■ Conclusion of Law No. 2 reads in part, "The School Corporation followed the necessary statutory steps in the cancellation of Myers' contract. A recommendation of the superintendent is not a prerequisite to the cancellation of an indefinite teacher's contract under Indiana statute. To the extent the requirement of the recommendation exists and was not waived by Myers, it was fulfilled by Rubright's recommendation ...". While the trial court certainly alludes to waiver, we do not believe that the above statement directly constitutes a finding that Myers waived the issue.

"Waiver is the intentional relinquishment of a known right", *Salem Community School Corporation v. Richman,* (1980) Ind.App., 406 N.E.2d 269, 274, citing *Lafayette Car Wash., Inc. v. Boes,* (1972) 258 Ind. 498, 282 N.E.2d 837. At the August 25th hearing, Myers' attorney extensively

questioned Rubright about the source of his authority to make the recommendation. *See* page 1329 of this opinion, *supra.* Although the trial court found that neither Lanum nor Myers formally objected to Rubright's assumption of the superintendent's role in this matter, it also stated that Myers' attorney expressed dissatisfaction about such delegation in his closing statement. Finding of Fact, No. 27. Further, the trial court found that "Rubright himself was not sure of his position to make a recommendation". Finding of Fact, No. 28. We do not believe that the above conduct evinces the specificity of word and deed required of waiver. *Salem, supra,* at 274.

Myers' complaint includes a prayer for relief in the form of reinstatement to his former position or, in the alternative, a money judgment in the amount of $124,-050.50, plus costs, which amount is alleged to be compensatory damages for breach of contract. Further, Myers includes a prayer for punitive damages in the amount of $300,000.00. However, in his brief, Myers abandons his prayer for reinstatement as well as the claim for punitive damages and instead requests either the stated amount of compensatory damages or a remand to the trial court for a hearing on the amount of damages. Accordingly, we choose the latter course and reverse the judgment as to Myers, remanding this case to the trial court for a hearing on Myers' damages.

Judgment reversed and remanded for ascertainment of damages.

ROBERTSON and RATLIFF, JJ., concur.